ASBURY ET AL., APPELLANTS, *v.* HUGH L. BATES LODGE No. 686, FREE AND ACCEPTED MASONS, APPELLEE.

(Decided November 22, 1939.)

*Mr. Harry J. Koehler, Jr., Mr. R. J. Shank* and *Mr. Walter S. Harlan,* for appellants.
*Mr. Harry S. Wonnell,* for appellee.

MATTHEWS, J.  We have reached the conclusion that judgment should be rendered for the defendant, appellee herein.

The action is to enforce specific performance of a contract alleged to have been entered into by five members of the defendant lodge (its name then being the Fort Hamilton Lodge which was afterwards changed to Hugh L. Bates Lodge), whereby they agreed to convey certain real estate to it, in consideration of the lodge's agreement to pay $15,000 therefor.

It is sufficient for showing the basis of our decision to point out that the plaintiffs rely upon a resolution of the lodge introduced at its meeting on June 9, 1925, and adopted by a vote of 34 to 14 at the meeting on July 14, 1925.  The minutes of these two meetings are as follows:

"June 9, 1925.

"Resolution of Temple Com. to purchase S. Front street property carried Yes 32, No 15.

"The following motion was made and laid on the table, that Fort Hamilton Lodge purchase the Front

St. site in the event that the temple board turns it down and that a vote be taken on the motion at the stated meeting next, and that notice be given to all members of the lodge in regard to the same, at least fifteen days before that meeting.

"A motion carried that the master appoint a committee of seven to look into the possibilities of the site and report at the next stated meeting, further, that they be given power to employ an architect to assist them in making this investigation.

"The committee consists of Bros. H. L. Bates, S. G. Wirtz and Ralph H. Asbury, Homer Latimer, Wm. B. Wick, Guy Compton, and Earl Muncey.

"July 14, 1925.

"The temple committee reported that they employed an architect to look into the possibilities of the Front St. site and has plans to submit on a proposed temple. The lodge was called from labor to refreshment to allow the brethren to look over the plans and get information.

"After resuming work as Master Masons, a motion was passed that the lodge take a secret ballot on the motion presented at the last meeting referring to the purchase of the Front street site. Votes Yes 34, No 14.

"A motion passed that the master and wardens be given power to purchase the property.

"A motion passed that the master appoint a committee of three or more, known as the Way and Means committee, whose duty it will be to plan a method of raising funds to buy the property and to report at the next stated meeting. Bros. R. F. Schneider, Holle Schneider, Jno. F. Kyger, Jesse Gilley and F. E. Pepper were appointed."

Now, do these minutes show an acceptance of the offer communicated to the offerors? The evidence shows that the offerors were present and participated as members in the action taken by the lodge. In that way they knew of the action taken. No other notice

of what had been done was given by any member or officer of the lodge. The master and wardens did nothing toward purchasing this property following this meeting. They gave the offerors no notice of the acceptance of the offer.

Unlike a human being, acting solely in his individual capacity, an association of persons, such as a lodge, must arrive at a conclusion to accept an offer by outward demonstration. Without a motion or resolution submitted and a favorable vote cast for its passage, no collective intent to accept could be reached. And until that conclusion has been reached, no subsequent act could bind the association.

But, a resolution to accept is not an acceptance, and the written minutes thereof in the books of the lodge, signed by the lodge secretary do not satisfy the requirements of the statute of frauds. It is not a memorandum of a promise, or acceptance of an offer, made to the lodge. It is evidence that the members of the lodge, or some of them, had agreed among themselves that the lodge would accept—not that it did accept. It was not itself a purchase. The members were not dealing with the offerors in passing this resolution. They were acting *inter sese,* and conferring authority upon their officers. It was an authorization to the master and wardens to act for the lodge in its dealings with the offerors. This authority might have been revoked at any time before it was acted upon.

The fact that the offerors as members of the lodge were present and participated in the deliberations and actions, and, therefore, knew that the lodge, or certain members had concluded to accept, does not change the essential character of what was done.

Mere statements of intention, promissory expressions, or statements made to third persons are not sufficient, in themselves, to create contractual obligations. 17 Corpus Juris Secundum, 387 *et seq.; Upsal*

*Street Realty Co.* v. *Rubin,* 326 Pa., 327, 192 A., 481;
*Broad St. National Bank of Trenton* v. *Collier,* 112
N. J. L., 41, 169 A., 552, 553; *Stone* v. *Commonwealth
Finance Corp.,* 127 Misc., 368, 216 N. Y. Supp., 639;
*Georgia Cane Products Co.* v. *Corn Products Refining
Co.,* 141 Ga., 40, 80 S. E., 318. Such expressions, even
though promissory in form, must be construed in the
light of the surrounding circumstances, and as a nor-
mally constituted person would understand them.
*Woods* v. *Fifth-Third Union Trust Co.,* 54 Ohio App.,
303, 6 N. E. (2d), 987. Applying this rule, there is
certainly less basis for giving binding contractual ef-
fect to expressions of intention between promissors
themselves, than by an expression by a promissor to
a third person, having no relation to the transaction
otherwise.

This intramural action of the lodge did not create
an extraneous obligation any more than a resolution
reached in the secret places of the mind of a natural
person would bind him to an offeror, whose offer he
had thus concluded to accept.

This construction of the purpose of the lodge's
action is, at least, as reasonable as that the purpose
was to conclude by their action a binding contract.
Should the members as reasonable men have under-
stood that they were participating in the final act of
imposing a contractual obligation, when they voted on
this resolution? Is it not as reasonable, or more so,
to conclude that they believed they were giving their
approval to the authorized agents to conclude the con-
tract by notifying the offerors of the acceptance of
their offer? We believe so.

The fact that the lodge did not have funds at the
time with which to finance the purchase and no power
to coerce contributions strengthens us in our conclu-
sion. Recognizing this situation, the lodge at the same
meeting when the same members were present adopted

a resolution appointing a ways and means committee to raise funds. This is given added significance by the rule of the order against incurring obligations of this amount without funds in the treasury to meet them.

In 1 Williston on Contracts (Revised Ed.), 207, it is said:

"An acceptance must be positive and unambiguous. * * * But even though no change in the offer is suggested in the reply of the offeree, it nevertheless may not so clearly indicate assent to the offer as to create a contract. Thus a reply to an offer to lease premises in the following terms was held not to make a binding contract:— 'I have decided on taking No. 22 Belgrade Road, and have spoken to my agent Mr. C., who will arrange matters with you.' The same is true of a telegram to a bidder for public work, 'You are low bidder. Come on morning train;' also of the following reply to an offer to sell coal, 'telegram received. You can consider the coal sold. Will be in Cleveland and arrange particulars next week.' "

Section 25 of Restatement of Law of Contracts is as follows:

"If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer."

If lack of a fixed purpose to make an offer will prevent the manifestation of intention to make an offer from binding the offeror when the offeree knows or has reason to know that fact, certainly the same lack of a fixed purpose known to the offeror would prevent a manifestation of intent to accept from binding the offeree.

For years after this resolution was adopted the offerors handled this property as their own—rented it, collected the rent, made repairs and remodeled the building without rendering any sort of an accounting for more than six years. No deed has ever been tendered and no demand for the completion of the transfer was made for more than ten years. Certainly, this inaction was inconsistent with the existence of a binding contract and strengthens our conclusion as to the nature of the action taken by the lodge in passing the resolution of July 14th.

There are some incidents, which, if taken from their setting—such as furnishing the funds to pay some taxes and repairs and $1,000 on the indebtedness of the offerors to the bank for the purchase price—would lead to the conclusion that the lodge had some interest in this property, but when it is considered the offerors were influential members of the lodge, the probative value of such incidents is very materially weakened. On the other hand, the action of the offerors in relation to the property was inconsistent with the existence of a contract to sell the property.

The burden of proof was upon the plaintiffs and we have reached the conclusion that they have failed to sustain that burden.

A decree in favor of the defendant may be presented.

*Decree accordingly.*

HAMILTON, P. J., and Ross, J., concur.