The AUSTIN PRESBYTERIAN THEOLOG-
ICAL SEMINARY et al., Petitioners,

v.

Thomas D. MOORMAN, Administrator,
et al., Respondents.

No. A–10388.

Supreme Court of Texas.

May 19, 1965.

Rehearing Denied July 7, 1965.

Alvis & Carssow, Austin, Crawford C. Martin, Hillsboro, for Austin Presbyterian Theological Seminary and others.

Powell, Rauhut, McGinnis & Lochridge, R. Harry Akin, Austin, with above firm, for Scottish Rite Educational Ass'n and others.

Cofer, Cofer & Hearne, Austin, for respondents.

WALKER, Justice.

The will of Hicklin P. Hunnicutt, deceased, gave Miss Helen Mar Hunnicutt an option to purchase 1,000 acres of land owned by the testator in Dimmit County for $8,000.00 to be paid to the executor within one year after the probate of the will. It further directed that in the event she failed to exercise the option by reason of her death or some providential hindrance, the land should be sold by the executor and the proceeds divided among a number of schools, hospitals and other eleemosynary organizations as provided in the will. Miss Hunnicutt died intestate about ten months after the will was admitted to probate. After her death but within the period during which the option might be exercised, the administrator of her estate tendered $8,000.00 to The Austin National Bank, Independent Executor of the estate of Hicklin P. Hunnicutt, and requested a conveyance of the land. This suit was then instituted by the Bank to obtain a judgment construing the will and determining whether the option had been exercised either by Miss Hunnicutt or by her personal representative.

All persons interested in the will or estate of Hicklin P. Hunnicutt were named as parties, but the proceeding developed into a controversy between the heirs and personal representative of Helen Mar Hunnicutt, who are respondents here, and the various organizations which claim that the will entitles them to the proceeds of the land in the event the option was not exercised. The Austin Presbyterian Theological Seminary and other representatives of the latter group are our petitioners. The single special issue submitted to the jury inquired whether Miss Hunnicutt had elected to exercise the option.[1] The issue was answered by the jury in the negative, and judgment was rendered on the verdict decreeing that the option was not exercised by Miss Hunnicutt and could not be exercised by the administrator of her estate, and directing the Bank to sell the land and distribute the proceeds as provided in the will. The Court of Civil Appeals concluded that an exercise of the option by Miss Hunnicutt was established by the evidence as a matter of law. It reversed the judgment of the trial court and remanded the cause for further proceedings. Moorman v. Austin National Bank, 381 S.W.2d 408. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

Helen Mar Hunnicutt lived for many years in the home of Hicklin P. Hunnicutt and his wife, Mrs. Bertha M. Hunnicutt. She was the niece of Mrs. Hunnicutt. Mr. Hunnicutt regarded her as his adopted daughter and so referred to her in his will. The land in question is part of a 2,000-acre ranch formerly owned by Mrs. Hunnicutt as her separate property. She died in 1943 leaving a will which devised the ranch to her husband and Helen Mar Hunnicutt in equal shares. It was partitioned by them in 1945, the north one-half being set apart to Hicklin P. Hunnicutt and the south one-half to Helen Mar Hunnicutt. Mr. Hunnicutt's will was written prior to the division and refers to his one-half interest in the land, but the parties recog-

1. The phrase "elected to exercise" was defined in the charge as meaning "any statement or statements made by Helen Mar Hunnicutt to Bronson C. Turner, if any, which communicated to him her then existing intention, if any she had, and her then definite decision, if any she had made, to purchase the land in question and to pay the $8,000.00 in cash within one year from the probate of the will of Hicklin P. Hunnicutt."

nize that the option provisions apply to the north one-half of the property set apart to him in the partition.

Hicklin P. Hunnicutt died on April 16, 1953. He left a holographic will dated January 5, 1944, and a holographic codicil thereto dated March 15, 1948. These instruments were admitted to probate as his last will and testament on May 26, 1953. In Items 3 and 4 of the original will, the testator gave his half brother, Thomas B. Clark, a lot in Stamford, certain personal property, and $5,000.00 cash, or so much thereof as might be realized upon the surrender of seven bonds, and left Helen Mar Hunnicutt his interest in the home and contents, all capital stock of The Austin National Bank owned by him at the time of his death, and a $1,000 H.O.L.C. bond. Provision for the disposition of Dimmit County land and the distribution of the proceeds was made in Item 5, in a section entitled "Proviso to Item 5," and in the codicil, all of which are quoted in the opinion of the Court of Civil Appeals. Item 6 was introduced by a statement that "the foregoing 5 items of this written will dispose of all of my estate except three small pieces of property which are not herein appropriated." The three properties were then described, and the executor was directed to convert the same into cash, use the proceeds to pay debts and expenses, and divide the remainder equally between Thomas B. Clark and Helen Mar Hunnicutt.

According to the inventory and appraisement of Mr. Hunnicutt's estate, he owned at the time of his death 200 shares of common stock of The Austin National Bank worth $18,000.00. His interest in the home was appraised at $10,000.00, and his interest in the Dimmit County land was valued at $25,000.00. Aside from these three items, the estate consisted of bonds, cash and personal property of the aggregate value of approximately $4,000.00. The H.O.L.C. bond mentioned in the will is not listed in the inventory.

Any contention that the option could be exercised by the personal representative of Helen Mar Hunnicutt after her death was abandoned by respondents on appeal. The issue thus narrows to whether the testamentary offer was accepted by Miss Hunnicutt during her lifetime. She did not ever communicate with the Bank in writing about the matter, but the case was tried on the theory that an oral acceptance by her would have given rise to an enforceable bilateral contract performable by the administrator of her estate. Mr. B. C. Turner, Trust Officer of the Bank, discussed the option with Miss Hunnicutt on several occasions and testified fully regarding his conversations with her. It does not appear that she ever mentioned the subject to anyone else connected with the Bank, and the only evidence tending to show whether or not the option was exercised is the testimony of Mr. Turner and the surrounding circumstances.

■ The material portions of Mr. Turner's testimony are quoted at length in the opinion of the Court of Civil Appeals and will not be repeated here. Respondents say that the facts are undisputed, and that whether the option was exercised is a question of law for the court. We do not agree. The testimony given by Mr. Turner does not establish with certainty all that was said in his conversations with Miss Hunnicutt, and he was impeached by proof of a prior inconsistent statement bearing directly upon the basic issue in the case. The jury was thus free to accept or reject all or any part of his testimony, and in these circumstances the question of what was said and done between the parties is one of fact. See Keesey v. Old, 82 Tex. 22, 17 S.W. 928; Maddox Motor Co. v. Ford Motor Co., Tex.Com.App., 23 S.W.2d 333.

■ When the evidence is viewed, as it must be, in the light most favorable to the verdict of the jury, it appears that Miss Hunnicutt never told Mr. Turner that she had decided to purchase the land, that she

would take the property, or that she exercised her option to do so. She did say to him that "she wanted to take the property" and that "she wished to exercise the option," but "each time it was discussed she stated that she did not have the available cash at that time to exercise the option." It was Mr. Turner's definite impression that she desired and intended to exercise the option within the twelve-months period and pay the money. Respondents say that this shows as a matter of law that Miss Hunnicutt expressed to Mr. Turner her existing intention to exercise the option and pay the money within the time allowed by the will.

It has been said that "any act signified to the optioner which brings to his mind the present intention of the optionee to exercise the option privilege is sufficient." See James on Option Contracts § 823. This refers, of course, to the expression of an intention to exercise the option then and there. The jury was entitled to conclude from all the evidence that Mr. Turner understood that Miss Hunnicutt intended to exercise the option in the future, and an expression of that intention would not be sufficient to create a bilateral contract of purchase and sale. The question is whether she accepted the testamentary offer and thereby bound herself to take the land and to pay the $8,000.00 within one year after the will was probated. See 1A Corbin on Contracts, 1963 ed., § 264.

The exercise of an option like the acceptance of any other offer must be positive and unequivocal. See Restatement of the Law of Contracts § 58; 91 C.J.S. Vendor and Purchaser § 10. "A valid acceptance * * * must be unequivocally expressive of an intent to create thereby, *without more,* a contract." Minar v. Skoog, 235 Minn. 262, 50 N.W.2d 300. See also Asbury v. Hugh L. Bates Lodge, 62 Ohio App. 430, 24 N.E.2d 638; Havens v. American Fire Ins. Co., 11 Ind.App. 315, 39 N.E. 40. Professor Williston observes that this requirement is often treated as identical with the requirement that an acceptance must not change, add to or qualify the terms of an offer. He then points out that:

"* * * even though no change in the offer is suggested in the reply of the offeree, it nevertheless may not so clearly indicate assent to the offer as to create a contract. Thus a reply to an offer to lease premises in the following terms was held not to make a binding contract: —'I have decided on taking No. 22 Belgrave Road, and have spoken to my private agent * * * who will arrange matters with you.' The same is true of a telegram to a bidder for public work. 'You are low bidder. Come on morning train;' also of the following reply to an offer to sell coal, 'Telegram received. You can consider the coal sold. Will be in Cleveland and arrange particulars next week.' Likewise a reply to an offer to sell land, 'Have twice attempted the tender of the first payment of $500 upon the agreement made between us on the 7th of December last. I will meet you, etc., when I shall be ready to make tender of the money and execute the proper agreements thereupon,' is insufficient." I Williston on Contracts, 3rd ed. 1957, § 72.

This would be an entirely different case if Miss Hunnicutt had stated to Mr. Turner without qualification that she wished to exercise the option or wanted to take the property. The words "wish" and "want" can be and frequently are used, however, to express hope or desire unaccompanied by any expectation or intention of gratifying the wish or want immediately. It may fairly be inferred that they were used in that sense by Miss Hunnicutt, because each time the matter was discussed she told Mr. Turner that she did not have the available cash at that time to exercise the option. Although payment of the money may not have been essential to the creation of a binding bilateral contract, her statements indicate that she did not intend to obligate

herself at the time but expected to exercise the option when she felt the $8,000.00 was available.

It is true that Miss Hunnicutt was financially able to pay the $8,000.00. At the time of her conversations with Mr. Turner, she owned the home place, her one-half of the ranch, government bonds worth approximately $10,000.00, some 25 shares of capital stock of The Austin National Bank, and probably had about $8,500.00 on deposit with the Bank. She was also entitled to the 200 shares of bank stock bequeathed to her by Hicklin P. Hunnicutt, although this stock was not distributed by the executor during her lifetime. Miss Hunnicutt's net worth was thus in excess of $80,000.00, but it was her opinion that she did not have the available cash to exercise the option.

On the basis of the valuation of the ranch as shown by the evidence and assuming that the property could have been readily sold at that figure, it clearly would have been to Miss Hunnicutt's economic advantage to exercise the option. There is no evidence, however, that anyone was interested in buying the land or that a purchaser able and willing to pay its full value could have been easily found. In any event we are not concerned here with an outright devise or a devise subject to a charge, and our view as to what Miss Hunnicut should have done is not material to the present inquiry. She was given an option to buy the property, and her estate is now entitled to take the same for the stipulated price only if the offer ripened into a contract of purchase and sale during her lifetime.

The surrounding circumstances tend to support rather than to destroy the finding of the jury. Miss Hunnicutt was never married, and most of her adult life was spent in scholarly pursuits. A member of the original staff of the Texas College of Arts and Industries at Kingsville, she was employed at the time of her death as a Spanish translator in the Archives at The University of Texas. Several witnesses described her as a shy, quiet, reserved person who was very careful with her money. She died unexpectedly on March 13, 1954, while visiting a friend in Blanco County.

Since Miss Hunnicutt was an intelligent, educated person, it is reasonable to assume that she was capable of making it clear to Mr. Turner if she wished to obligate herself to take the land. Although she had owned a half interest in the ranch for some ten years, she did not know where it was located and was not certain that she found it on the one occasion she attempted to do so. Her investments in bank accounts, stocks and bonds were relatively stable in value and required little supervision. A person of her background and temperament may well have been reluctant to use the funds represented thereby to purchase a distant ranch with which she was not familiar, and certainly would have been inclined to defer making a final decision while there was still ample time to consider the matter. There is no evidence that she ever discussed with Mr. Turner any arrangements for paying the $8,000.00 or made any preparations for taking over management of the property, and it does not appear that she definitely expected to have the money "available" within the period prescribed by the will. We hold that acceptance of the testamentary offer has not been established as a matter of law.

Respondents contend that the Bank has no power to sell the land even if the option was not exercised. They say that the stipulation concerning the death of Helen Mar Hunnicutt in the "Proviso Relative to Item 5" refers to her death during the testator's lifetime. Since she did not die prior to the death of Hicklin P. Hunnicutt, respondents insist that the contingency giving rise to the power of sale never occurred and that the land passed as part of the residuary estate under the provisions of Item 6. In support of this contention they cite the

cases involving a devise of the fee with provision for a gift over in the event of the death of the first taker. References to death of the first taker in that situation are usually construed to mean death prior to that of the testator.

 As pointed out in St. Paul's Sanitarium v. Freeman, 102 Tex. 376, 117 S.W. 425, 132 Am.St.Rep. 886, the reasons for that rule of construction are variously stated. One reason is that since death is a certain event, a reference to the death of the first taker must be construed to mean death during the lifetime of the testator if it is to be a contingent event as the testator probably intended. "But when the death of the first taker is coupled with other circumstances which may or may not ever take place, as, for instance, death under age or without children, the devise over, unless controlled by other provisions of the will, takes effect, according to the ordinary and literal meaning of the words, upon death, under the circumstances indicated, at any time, whether before or after the death of the testator." Britton v. Thornton, 112 U.S. 526, 5 S.Ct. 291, 28 L.Ed. 816.

Here the testator was dealing with an event which might or might not ever take place, i. e. the failure of Helen Mar Hunnicutt to exercise the option "by reason of her death or some Providential hindrance." Item 6 of the will does not purport to be a general residuary clause, and a reading of the entire instrument discloses that the testator contemplated that the land would either be purchased by Miss Hunnicutt or be sold by the Bank. We are satisfied that he intended for the Bank to sell the property and divide the proceeds as set out in the Proviso if Miss Hunnicutt was prevented from exercising the option by her death subsequent to his.

Respondents' remaining points of error in the Court of Civil Appeals have been considered and are overruled. They had no point there invoking the jurisdiction of the intermediate court to determine whether the finding of the jury is contrary to the overwhelming weight and preponderance of the evidence. The judgment of the Court of Civil Appeals is accordingly reversed, and that of the trial court is affirmed.