[Cite as *Union Stock Yards Co. v. Hillsboro*, 191 Ohio App.3d 564, 2010-Ohio-5975.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| UNION STOCK YARDS COMPANY, | : | |
| | : | |
| | : | |
| Appellee, | : | Case No. 09CA17 |
| | : | |
| v. | : | **Released: December 2, 2010** |
| | : | |
| CITY OF HILLSBORO, | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Appellant. | : | |

_____

APPEARANCES:

Thomas M. Tepe, for appellee.

Kathryn Hapner, for appellant.

_____

Per Curiam.

{¶ 1} Appellant, the city of Hillsboro, appeals the trial court's judgment entered in favor of appellee, the Union Stock Yards Company. The trial court determined that a binding contract existed under which appellant agreed to purchase property from appellee for the price of $325,000. The court awarded appellee $140,000 in damages. Appellant argues that the trial court should have entered summary judgment in its favor. Appellant raises several subarguments in support of its assertion, but appellant's essential argument is that no valid contract exists between the

parties. We agree. The undisputed evidence shows that as a matter of law, no valid contract existed. Accordingly, we sustain appellant's first assignment of error and reverse the trial court's judgment. The remaining assignments of error are moot and we need not address them.

I

FACTS

{¶ 2} In the fall of 2007, the Hillsboro city council passed a resolution that authorized the mayor to enter into an agreement to purchase appellee's real estate for a price not to exceed $325,000. The resolution stated: "The Mayor is hereby authorized and directed to enter into a purchase agreement for the real property located in the City of Hillsboro * * * from the Union Stockyards [sic, Stock Yards] Company for the purchase price not to exceed $325,000, upon the following conditions: (1) the purchase must be completed before the end of 2007 calendar year; (2) property must pass an environmental study and (3) if a new survey is required, the Seller will pay for the cost of the survey." Although an agreement was prepared and appellee signed it, the mayor never executed an agreement to purchase the real estate.

{¶ 3} On February 7, 2008, appellee filed a complaint against appellant for breach of contract. Appellant subsequently filed a motion for

judgment on the pleadings and later filed a summary-judgment motion. Appellant asserted that no contract existed because it did not execute the agreement and thus the purported contract does not comply with the statute of frauds. Appellant further argued that the contract is invalid for failing to comply with certain statutory provisions governing municipal contracts. Appellant also contended that even if the city council's resolution could be construed as a contract, the contract contained three conditions, at least one of which remained unfulfilled. Appellant additionally argued that any promissory-estoppel or equitable-estoppel claim must fail because these doctrines are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function.

{¶ 4} The trial court overruled both of appellant's motions. At the trial, council member Charles Walker testified that he believed that the city had agreed to purchase the property but for whatever reason, the mayor decided in December that he wanted an appraisal. The mayor testified that the appraisal was conducted after the city council passed the resolution and that the property appraised at $185,000.

{¶ 5} On June 19, 2009, the trial court entered judgment in appellee's favor. The court determined that the parties reached an oral agreement and that the resolution constituted "a sufficient writing signed by the city to be

charged to remove this contract from the [statute of frauds]."   The court awarded appellee $140,000 in damages.

## II

## ASSIGNMENTS OF ERROR

{¶ 6}   Appellant timely appealed and raises the following assignments of error:

First Assignment of Error:

> The trial [court] erred in overruling appellant's motion for summary judgment.

Second Assignment of Error:

> The trial court erred in its determination that a valid real estate purchase contract existed between appellant and appellee even though appellant, the purchaser, did not execute said contract.

Third Assignment of Error:

> The court erred in determining that plaintiff was ready, willing and able to close the transaction and that therefore, specific performance was appropriate.

Fourth Assignment of Error:

> The decision of the court is against the manifest weight of the evidence in that requirements of Title 7 of the Ohio Revised Code which lists various formalities that are prerequisites in order to bind a municipal corporation to a contract were not met.

## III

## ANALYSIS

{¶ 7} In its first assignment of error, appellant argues that the trial court erred by denying its summary-judgment motion. The crux of this assignment of error is that a valid contract does not exist.

{¶ 8} When reviewing a trial court's decision regarding a motion for summary judgment, appellate courts must conduct a de novo review. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. In such a review, an appellate court reviews the trial court's decision independently and without deference to the trial court's determination. See, e.g., *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 9} A trial court may grant a motion for summary judgment only when (1) the moving party demonstrates there is no genuine issue of material fact, (2) reasonable minds can come to only one conclusion, after the evidence is construed most strongly in the nonmoving party's favor, and that conclusion is adverse to the opposing party, and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56; see also *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46.

{¶ 10} The existence of a contract is a question of law. *Telxon Corp. v. Smart Media of Delaware, Inc.*, Summit App. Nos. 22098 and 22099, 2005-Ohio-4931, at ¶ 40; see also *Hocking Valley Community Hosp. v. Community Health Plan of Ohio*, Hocking App. No. 02CA28, 2003-Ohio-4243, at ¶ 11. "[T]o declare the existence of a contract, both parties to the contract must consent to its terms; there must be a meeting of the minds of both parties; and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. A contract does not exist unless the parties have a meeting of the minds as to the essential terms of the contract. Id.; see also *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16.

{¶ 11} In a case bearing facts similar to those in the case at bar, the Supreme Court of Ohio considered whether a city manager possessed authority to bind the city to a long-term lease. See *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883. In *Shampton*, the plaintiff asserted that he and the city had entered into a long-term lease and that the city breached the agreement. The plaintiff also asserted a promissory-estoppel claim. On appeal to the Supreme Court of Ohio, the court determined that the city never entered into a long-term lease with the

plaintiff. The court first looked to the city charter, which gave the city manager the power to enter into contracts but only if the city council authorized the city manager to bind the city or otherwise ratified the contract. The court then examined the plain meaning of the city council's resolution, which stated: "The City Manager is hereby authorized to enter into a temporary lease agreement." Id. at ¶ 30. The court determined that the city council delegated the authority to bind the city to the temporary lease arrangement to the mayor. The court then determined that although the city manager entered into a temporary lease arrangement with the plaintiff, the city manager never executed a long-term lease with the plaintiff. The court thus rejected the plaintiff's breach of contract claim.

{¶ 12} The court also rejected the plaintiff's promissory estoppel claim. The court explained:

> To be successful on a claim of promissory estoppel, "[t]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630, citing *Heckler v. Community Health Serv.* (1984), 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42. Persons seeking to enter into a contractual relationship with a governmental entity are on constructive notice of the statutory limitations on the power of the entity's agent to contract. *Bohach v. Advery*, Mahoning App. No. 00-CA-265, 2002-Ohio-3202, 2002 WL 1396744. Since state and local laws are readily

available for public review, it is a simple matter for a party to educate itself as to the procedural formalities with which government officials must comply before they may bind a governmental entity to a contract. Here, as noted previously, the charter and Resolution No. R-95-32 clearly did not grant Doczy the authority to enter into a long-term lease. As a result, even if Doczy did make any promises regarding the long-term lease, appellees could not have reasonably relied upon them. Liability does not attach to the city based on appellees' mistaken interpretation of the resolution. Thus, appellees' claim of promissory estoppel is without merit.

Our decision in this case is consistent with long-held principles of this court. " 'An occasional hardship may accrue to one who negligently fails to ascertain the authority vested in public agencies with whom he deals. In such instances, the loss should be ascribed to its true cause, the want of vigilance on the part of the sufferer, and statutes designed to protect the public should not be annulled for his benefit.' " *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 173, 34 O.O.2d 278, 214 N.E.2d 408, quoting *McCloud & Geigle v. Columbus* (1896), 54 Ohio St. 439, 452-453, 44 N.E. 95. Accord *Lancaster v. Miller* (1898), 58 Ohio St. 558, 51 N.E. 52. Protection of the public's resources in this context sometimes comes with a cost to misinformed parties.

Id. at ¶ 34-35.

{¶ 13} Similarly, in the case at bar, a plain reading of the city council's resolution reveals not that the city council entered into a contract with appellee but that the city council authorized and delegated the authority to enter into the contract to the mayor. Because the mayor never entered into a contract with appellee, there is no valid contract upon which appellee can base its breach of contract claim.

{¶ 14} Moreover, even if one could construe the council's resolution as a contract, the contract did not define the purchase price, but apparently left it open to further negotiation. There is no evidence that the city council consented, by its resolution, to purchase the property for $325,000. Instead, the evidence shows that the council's resolution authorizes the purchase as long as the price does not exceed $325,000. No evidence exists that the mayor, the person to whom council gave the authority to contract, ever agreed to purchase the property for any price, let alone $325,000. Because there was no meeting of the minds regarding the purchase price, no valid contract exists.

{¶ 15} Additionally, just like the plaintiff in *Shampton*, appellee does not have a valid promissory-estoppel claim against appellant. Even if certain council members made promises to appellee regarding the purchase of its property, appellee could not have justifiably relied on those promises when the council resolution plainly gave the authority to contract to the mayor, not to the council or to any individual council member. Liability cannot attach simply because appellee mistakenly interpreted the resolution as a contract to purchase the property. Furthermore, the mayor's decision not to enter into the contract resulted from his consideration of the city's financial resources, which is a valid consideration under *Shampton*.

{¶ 16} We further find the instant case similar to the facts presented in

*Asbury v. Hugh L. Bates Lodge No. 686* (1939), 62 Ohio App. 430, 24

N.E.2d 638. In *Asbury*, lodge members adopted a resolution to purchase real

estate. The resolution recited that the "master and wardens be given power

to purchase the property." The court held that the resolution was not an

acceptance of the offer to sell so as to create a binding contract. The court

explained:

> [A] resolution to accept is not an acceptance * * *. It is not a memorandum of a promise, or acceptance of an offer, made to the lodge. It is evidence that the members of the lodge, or some of them, had agreed among themselves that the lodge would accept—not that it did accept. It was not itself a purchase. The members were not dealing with the offerors in passing this resolution. They were acting inter sese, and conferring authority upon their officers. It was an authorization to the master and wardens to act for the lodge in its dealings with the offerors. * * *
>
> The fact that the offerors as members of the lodge were present and participated in the deliberations and actions, and, therefore, knew that the lodge, or certain members had concluded to accept, does not change the essential character of what was done.
>
> Mere statements of intention, promissory expressions, or statements made to third persons are not sufficient, in themselves, to create contractual obligations. Such expressions, even though promissory in form, must be construed in the light of the surrounding circumstances, and as a normally constituted person would understand them.

(Citations omitted.) Id. at 433-434.

{¶ 17} A similar rationale applies in the case at bar.  The city council, similar to the lodge members, passed a resolution authorizing the mayor to act for the city in its dealings with appellee.  The council's resolution did not constitute an acceptance of appellee's offer to sell.   The resolution contemplated that the mayor would take further action to complete the contract formation.  The resolution authorized the mayor to purchase the property for a price not to exceed $325,000.  The mayor did not accept appellee's offer to sell for $325,000.  Instead, he requested and obtained an appraisal of the property, after which, the mayor declined to execute a contract with appellee.

{¶ 18} In addition to basic contract formation requirements, a municipality may enter into a contract only as provided by statute.  See *Pugh v. Ned Peppers*, Montgomery App. No. 22939, 2010-Ohio-1917, at ¶ 47.  This principle is outlined in *Buchanan Bridge Co. v. Campbell* (1899), 60 Ohio St. 406, 54 N.E. 372:

> Whatever the rule may be elsewhere, in this state the public policy, as indicated by our constitution, statutes and decided cases, is that, to bind the state, a county, or city for supplies of any kind, the purchase must be substantially in conformity to the statute on that subject, and that contracts made in violation or disregard of such statutes are void, not merely voidable, and that courts will not lend their aid to enforce such a contract, directly or indirectly, but will leave the parties where they have placed themselves.  If the contract is executory, no action can be maintained to enforce it; and, if

> executed on one side, no recovery can be had against the party on the other side.

Id. at 419-420. Thus, a city "cannot be bound by a contract that is not properly endorsed or 'formally ratified through proper channels.'" *Pugh* at ¶ 48, citing *Wellston v. Morgan* (1901), 65 Ohio St. 219, paragraph three of the syllabus. An individual or entity entering into a contract with a municipality bears the burden of " 'ascertain[ing] whether the contract complies with the Constitution, statutes, charters, and ordinances so far as they are applicable. If he does not, he performs at his peril.' " *Shampton,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, at ¶ 28, quoting *Lathrop Co. v. Toledo* (1966), 5 Ohio St.2d 165, 173, 214 N.E.2d 408.

{¶ 19} For example, in *Enviro-Flow Cos. Ltd. v. Chauncey*, Athens App. No. 07CA5, 2008-Ohio-698, we held that a village contract was null and void because of noncompliance with R.C. 731.141. In *Enviro-Flow*, the mayor signed a contract with Enviro-Flow for certain sewer repairs. After Enviro-Flow incurred more expenses than approved in the bid that the mayor signed, Enviro-Flow filed an action for breach of contract and unjust enrichment. The village of Chauncey filed a summary-judgment motion, in which it argued (1) that the contract was null and void due to noncompliance with R.C. 731.141 and (2) that Enviro-Flow could not maintain an unjust-enrichment claim against it. The trial court agreed with the village (1) that

the contract was null and void under R.C. 731.141, which requires a contract

to be signed by the village administrator and the village clerk and (2) that

Enviro-Flow could not assert an unjust-enrichment claim against it, a

political subdivision.  On appeal, we affirmed the trial court's judgment.  We

stated:

> R.C. 731.141 requires both the Village Administrator and the Village Clerk to sign the contract.  In addition, the contract does not appear to conform to R.C. 705.11 (Village Solicitor is required to approve the contract as to form.).  " [']We think there is no hardship in requiring [contractors], and all other parties who undertake to deal with a municipal body in respect of public improvements, to investigate the subject, and ascertain at their peril whether the preliminary steps leading up to contract, and prescribed by statute, have been taken.['] "  * * * *Lathrop Co. v. City of Toledo* (1966), 5 Ohio St.2d 165, 173[, 214 N.E.2d 408, quoting *McCloud & Geigle v. Columbus* (1896), 54 Ohio St. 439, 452, 44 N.E. 95].

Id. at ¶ 15.  We further determined that Enviro-Flow could not maintain an

unjust-enrichment action against the village.  We noted that the unjust-

enrichment claim "sound[ed] in promissory estoppel" and that this doctrine

does not apply " 'against a political subdivision when the political

subdivision is engaged in a governmental function.' "  Id. at ¶ 16, quoting

*Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d

716, syllabus.

{¶ 20} Other than the applicable statute, we find *Enviro-Flow*

indistinguishable from the case at bar.  In both cases, the contract fails to

comply with the statute specifying the requirements for a municipal contract. R.C. 705.11, which is similar to the statute we considered in *Enviro-Flow*, states that "[n]o contract with the municipal corporation shall take effect until the approval of the village solicitor or city director of law is indorsed thereon." Here, there is absolutely no dispute that the director of law failed to indorse his approval on the alleged contract. Therefore, in accordance with our *Enviro-Flow* decision, we agree with appellee that the alleged contract is null and void due to noncompliance with proper statutory procedures, i.e., R.C. 705.11. See *Wright v. Dayton*, 158 Ohio App.3d 152, 159-160, 2004-Ohio-3770, 814 N.E.2d 514 (stating that a party does not have a valid breach-of-contract claim against a municipality unless the contract was properly executed in accordance with statutory procedures).

{¶ 21} Furthermore, we observe that R.C. 731.05 governs the powers of a city council and states: "All contracts requiring the authority of the legislative authority for their execution shall be entered into and conducted to performance by the board or officers having charge of the matters to which they relate. After the authority to make such contracts has been given and the necessary appropriation made, the legislative authority shall take no further action thereon." This statute apparently does not give the city council the authority to execute a contract. Rather, that duty belongs to the

mayor. See *Coyne v. Salvatore*, Cuyahoga App. Nos. 79507, 79509, and 79510, 2002-Ohio-5819, at ¶ 80 (stating that the power to execute contracts belongs to the mayor and thus holding by implication that the power to execute contracts does not belong to the city council). Consequently, we agree with appellant that the trial court erroneously denied its summary-judgment motion.

{¶ 22} Moreover, appellee's estoppel claim must fail because appellee cannot prove that it justifiably relied on the city council's resolution when that resolution constituted only an authorization for the mayor to enter into a contract.[1] See *Shampton,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883. Furthermore, had appellee investigated whether proper statutory procedures had been followed, appellee would have discovered that the resolution could not constitute the contract, but rather that R.C. 705.11 required the law director to indorse the contract.

{¶ 23} Accordingly, because the undisputed evidence shows that the mayor did not enter into a contract with appellee, no valid contract exists. Additionally, any alleged contract is null and void due to noncompliance

---

[1] We observe that the Supreme Court of Ohio held in *Hortman*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, that "[t]he doctrines of equitable estoppel and promissory estoppels are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." Id. at syllabus. However, in the case at bar, we find it questionable whether appellant's conduct in negotiating the purchase of real estate for the construction of a fire station constituted a governmental function. Our review of the relevant statutory authority, R.C. 2744.01(C), and the applicable case law does not definitively clarify whether the negotiation of a real-estate contract for the construction of a fire station constitutes a governmental or proprietary function. Thus, we choose to decide this issue on grounds other than those set forth in *Hortman*. Moreover, the Supreme Court of Ohio has not overruled *Shampton*.

with statutory procedures. Thus, the trial court erroneously denied appellant's summary-judgment motion. Consequently, we sustain appellant's first assignment of error and reverse the trial court's judgment. The remaining assignments of error are moot, and we need not address them. See App.R. 12(A)(1)(c).

Judgment reversed.

MCFARLAND, P.J., and HARSHA, J., concur.

KLINE, J., concurs separately.

_____

KLINE, Judge, concurring.

{¶ 24} I concur in judgment and opinion with one exception. That is, I believe that purchasing real estate for the construction of a fire station is a governmental function. Under R.C. 2744.01(C)(2)(a), "[a] 'governmental function' includes * * * [t]he provision or nonprovision of police, *fire*, emergency medical, ambulance, and rescue services or protection." (Emphasis added.) And in my view, the disputed transaction falls under the city of Hillsboro's provision or nonprovision of fire services. Therefore, I would apply the syllabus in *Hortman* to Union Stock Yards' estoppel claim.