**D. J. HUNDAHL, Sr., et al., Appellants,**

v.

**H. A. ARMSTRONG, Jr., Appellee.**

No. 4259.

Court of Civil Appeals of Texas.

Eastland.

Nov. 27, 1968.

Rehearing Denied Jan. 3, 1969.

Thompson, Coe, Cousins & Irons, R. W. Porter, Larry L. Gollaher, Vernon Coe, R. B. Cousins, Dallas, for appellants.

Carrington, Johnson & Stephens, James E. Coleman, Jr. and Marvin S. Sloman, Dallas, George W. Krog, San Antonio, for appellee.

WALTER, Justice.

H. A. Armstrong, Jr., recovered a summary judgment against defendants D. J. Hundahl, Sr., D. J. Hundahl, Jr., individually, and in his capacity as President of National Security Life and Accident Insurance Company, Peter J. Julian, in his capacity as Secretary of National, and against National, for title and possession to 8,333 shares of capital stock in National. The named defendants have appealed.

In 1959, Armstrong and Hundahl, Jr., as First Parties, entered into a stock agreement with Hundahl, Sr., as Second Party. Paragraph five of such agreement is as follows:

"First Parties are each granted and given an option to purchase from Second Party, at any time within three years after the full retirement of said surplus certificates, but not later than April 15, 1967, not to exceed 8333 shares of said capital stock, acquiring and paying for the same in units of not less than 100 shares. The price to be paid to Second Party for said stock under this option shall depend on the date of purchase and payment, and is fixed as follows:

| | |
|---|---|
| By April 15, 1962 | $3.30 per share |
| Between April 15, 1962 and April 15, 1963 | $3.45 per share |
| Between April 15, 1963 and April 15, 1964 | $3.60 per share |
| Between April 15, 1964 and April 15, 1965 | $3.75 per share |
| Between April 15, 1965 and April 15, 1966 | $3.90 per share |
| Between April 15, 1966 and April 15, 1967 | $4.05 per share." |

Armstrong contends that, pursuant to the terms and conditions of the stock agreement contained in the quoted paragraph Five above, he established as a matter of law that he timely exercised his option to purchase the stock and tendered the consideration therefor in the manner required by law. We agree with his contention and affirm the judgment.

In support of his motion for summary judgment, Armstrong filed his affidavit, a part of which is as follows:

"2. At all times material to this suit, I was the executive vice president, secretary, and a director of Defendant National Security Life and Accident Insurance Company.

3. On or about April 23, 1959, Defendants D. J. Hundahl, Sr., and D. J. Hundahl, Jr., and I signed and entered into that certain agreement, a true and correct copy of which is attached to Plaintiff's Original Petition in this cause as 'Exhibit A,' and hereto as Exhibit 'A'.

4. Pursuant to the agreement of April 23, 1959, eight thousand three hundred thirty-three (8333) shares of the capital stock of Defendant Company were issued to me in my name. As provided in that agreement, all of said shares were

pledged and held by Republic National Bank of Dallas as collateral for loans incurred by Defendant D. J. Hundahl, Jr. and me in accordance with the terms of such agreement. On April 15, April 16, and April 17 of 1967, all of such shares of stock were so held by Republic National Bank of Dallas for loans which on each of such dates had been reduced so that the total amount of the outstanding indebtedness was approximately $40,000.00

5. As of April 15, 1967, all of the original loan to D. J. Hundahl, Jr. and me as described in paragraphs 3 and 4 of the agreement of April 23, 1959, had been liquidated so that the option described in paragraph 5 of such agreement was fully exercisable on or before April 15, 1967. Prior to April 15, 1967, I obtained the agreement and guarantee of Dewey Dean, a duly authorized officer of Republic National Bank of Dallas, that if my option under such agreement were exercised, the 8333 shares of capital stock of Defendant Company held in my name as collateral by the said Bank would be released from the collateral pledge agreement and delivered to me or my nominee or assigns.

6. At approximately 4:30 or 4:45 p. m. on Saturday, April 15, 1967, I drove to the home of D. J. Hundahl, Sr. in Dallas, Texas. I told Mr. Hundahl that I was there to exercise my option under the agreement of April 23, 1959. I handed him my personal check, number 1513, dated April 15, 1967, in the amount of $33,748.65, payable to D. J. Hundahl, Sr., and told him that I thereby exercised my option agreement. A true and correct copy of that check is attached to this affidavit as 'Exhibit B' and incorporated herein by reference the same as though set out fully herein and sworn to as is this affidavit.

7. Mr. Hundahl, Sr. took the check into his possession and retired to another room in his home.

8. Subsequently, Mr. Hundahl, Sr. refused to accept my check and insisted upon returning it to me. Mr. Hundahl, Sr., told me that he had turned the entire matter over to his attorney and that he would not deal with me any further."

In his supplemental affidavit Armstrong states the following:

While at the Hundahl's home, I received the name, address and telephone number of his lawyer from Mrs. Hundahl. I failed to reach the lawyer by telephone and no one answered when I called at his home. I then wrote Mr. Hundahl, Sr. a letter and informed him, in effect, that I was exercising my option to purchase the stock and enclosing my check for the purchase price of the stock. The receipt which I delivered to him at the house was not enclosed in the letter. I found out later that evening that Mrs. Hundahl had given me the address and telephone number of another person by the same name as their lawyer. I then called the attorney and he was not at home. I then sent him a telegram informing him of the events of the day and that I was proceeding to his house. When I arrived at the lawyer's home, I told him I was there to exercise my option and offered him the check. The lawyer informed me my telegram was just being read to him over the telephone. He further stated that my check was not legal tender and "It's late; let's handle this Monday morning."

At the beginning of banking hours on Monday morning I got $33,748.65 in cash and a Cashier's check for this amount and with two bank guards proceeded to the lawyer's office and offered him the cash or the Cashier's check. He refused to accept either and said, "Your option expired on the 15th, and I do not have the authority to extend the option."

The affidavit of Mrs. D. J. Hundahl, Sr. filed in opposition to Armstrong's mo-

tion and in support of appellants' motion is in part as follows:

"On April 15, 1967, H. A. Armstrong, Jr., in my presence tendered a personal check drawn on the Republic National Bank of Dallas, which check was not certified, payable to Mr. Hundahl provided he would sign a receipt, copy of which is attached hereto as 'Exhibit A', and made a part hereof for all intents and purposes. Mr. H. A. Armstrong, Jr. did not offer to leave his personal check except upon the condition that the receipt, copy of which is attached, be signed by my husband."

The receipt Mrs. Hundahl referred to provided that Hundahl, Sr., was accepting Armstrong's personal check, "—which acceptance I hereby acknowledge, satisfies in all respects any and all conditions required of said H. A. Armstrong, Jr. for the purchase of 8333 shares of said described stock."

The receipt further provided that Hundahl would withdraw the stock from the Bank and deliver it to Armstrong.

Appellants also filed affidavits by their lawyer, Dewey H. Dean, an officer of Republic National Bank, and D. J. Hundahl, Jr. Their lawyer's affidavit reveals that at about three minutes before midnight on April 15, 1967, someone called him and read a telegram which he says was substantially in the same language contained in Exhibit "C" attached to Mr. Armstrong's supplemental affidavit. He further stated that Mr. Armstrong arrived at his home after midnight. Mr. Armstrong informed him he was there to exercise his option. I told him I was not authorized to accept his check and that it was not legal tender, that it was late and after midnight and there was nothing that could be done at that time that could not be handled as well Monday morning.

Appellants contend the court erred in failing to render summary judgment for them because Armstrong did not timely exercise his option and in rendering summary judgment for Armstrong because there was a material fact issue as to whether Armstrong timely exercised his option to purchase stock under the 1959 stock agreement. They also contend there was no summary judgment evidence that Armstrong's remedy at law was inadequate and contend the court erred in decreeing specific performance by summary judgment and in adjudicating the status of all title and interest in the corporate stock as such issues were not raised by the pleadings or evidence.

In Austin Presbyterian Theological Seminary v. Moorman, 391 S.W.2d 717, (Sup. Ct., 1965), the court said:

"It has been said that 'any act signified to the optioner which brings to his mind the present intention of the optionee to exercise the option privilege is sufficient.' See James on Option Contracts § 823. This refers, of course, to the expression of an intention to exercise the option then and there."

"This would be an entirely different case if Miss Hunnicutt had stated to Mr. Turner without qualification that she wished to exercise the option or wanted to take the property. The words 'wish' and 'want' can be and frequently are used, however, to express hope or desire unaccompanied by any expectation or intention of gratifying the wish or want immediately. It may fairly be inferred that they were used in that sense by Miss Hunnicutt, because each time the matter was discussed she told Mr. Turner that she did not have the available cash at that time to exercise the option. *Although payment of the money may not have been essential to the creation of a binding bilateral contract,* her statements indicate that she did not intend to obligate herself at the time but expected to exercise the option when she felt the $8,000.00 was available."

In Perry v. Little, 419 S.W.2d 198, (Sup.Ct., 1967), the court said:

"The rule governing this case is expressed in 6 Williston on Contracts, (3rd ed.) § 833:

" 'It is said that the strict rules of tender are not applicable to a conditional offer to perform a concurrent condition; that what is essential is that it shall appear to the court and shall have been made clear to the other party to the contract that the exchange agreed upon would be carried out immediately if the latter would do his part. This requirement involves both ability on the part of the plaintiff to perform and an indication of that ability to the other party. The actual production of the money or other thing which the plaintiff is to give is said to be unnecessary.

" 'As the courts have said "the word 'tender' as used in connection with such a transaction, does not mean the same thing as when used with reference to the offer to pay money where it is absolutely due, but only a readiness and willingness to perform in case of the concurrent performance by the other party, with present ability to do so, and notice to the other party of such readiness." ' "

In San Antonio Joint Stock Land Bank v. Malcher, 164 S.W.2d 197, (CCA, 1942, writ ref. w. m.), the court said:

"Where an option does not contain provisions to the contrary all that is required by the optionee is that he notify the optionor, prior to the date of expiration, of his decision to exercise the option and he thereafter has a reasonable time within which to complete the deal. 66 C.J. 500; Horgan v. Russell, 24 N.D. 490, 140 N.W. 99, 43 L.R.A., N.S., 1150;

Killough v. Lee, supra, 2 Tex.Civ.App., 21 S.W. 970."

Based on the undisputed facts, we hold that the court properly granted Armstrong's motion for a summary judgment. We have considered all of appellants' points and find no merit in them. They are overruled.

The judgment is affirmed.

In Appellants' motion for rehearing they say:

"This Court has been led into error by counsel for Appellee in this:

(a) On page 15 of Appellee's brief the statement is made that 'He (Armstrong) immediately mailed a letter, certified mail, to Hundahl, Sr. enclosing the personal check he had previously tendered but *not*, enclosing or in any way requiring a receipt. (Tr. 49)' References to this misstatement of fact reappear at pages 17 and 29 of Appellee's Brief.

(b) This Court states in its opinion that 'In his supplemental affidavit Armstrong states the following: " * * * The receipt which I delivered to him at the house was not enclosed in the letter." There is no such statement in the supplementary affidavit or any other affidavit contained in the transcript filed in this case. The only place in the record such a statement appears is the three separate times in Appellee's brief.' "

We have again considered the record and have concluded that we were mistaken in placing such statement in our opinion. Said quoted statement is hereby withdrawn from the opinion. We have also concluded that such matter is immaterial and that the motion should be overruled and it is so ordered.