OPINION
Arthur and Mary Willhite, defendants-appellants, appeal the June 12, 2001 judgment of the Franklin County Municipal Court, Environmental Division, granting judgment in favor of the State of Ohio ex rel. Erica Scadden, Zoning Enforcement Officer, Franklin County Development Department, plaintiff-appellee ("zoning office" or "appellee").
Appellant, Mr. Willhite, is an ordained minister. Appellants operate the ministry of the Living Faith Fellowship Church, Inc. ("the church"), a non-profit religious organization, on a nine and one-half-acre tract of land they own on Clime Road, in Franklin County, Ohio. They also reside on the property. The church engages in worship services and food distribution. The property is located in the rural zoning district, a classification of the Franklin County Zoning Resolution ("resolution") of Franklin County, Ohio. The church provides food, clothing, and blankets — donated by area grocers, corporations, and bakeries — to various persons and groups, including the ill, needy, and aged. Numerous semi-tractor trailers are used to store the food and are located on the property. In any one month, two or three semi-trucks containing food and clothing make deliveries to the property. In 1995, the retail value of the food distributed by appellants was $500,000; in 1997, $1.2 million; and in 1998, nearly $2 million. In addition, the church grinds and sells mulch on the property, the revenue from which exclusively aids in funding the above-mentioned charitable acts. Two signs are on the property: one is a non-illuminated, hand-painted sign that advertises the mulch; and the other is a non-illuminated, professionally constructed sign that displays the name of the church.
On May 17, 1991, the zoning office became aware of certain activities on appellants' property and eventually issued a certificate of zoning compliance for the establishment of a "farm market" pursuant to section 110.011 of the resolution. The certificate of zoning compliance did not mention the sale of mulch, and appellants listed the current use of the property as "residential." In June 1998, the zoning office issued a letter informing appellants of a zoning violation on the property. The letter alleged that a landscaping business was being operated and commercial vehicles were being stored on the property. Within a few days, appellants claim they went to the zoning office, spoke to Bryan Wagner, an enforcement officer, and Wagner said everything looked "okay," and he would grant them a conditional use. No certificate of zoning compliance was ever granted.
In response to another letter from the zoning office, appellants again went to the zoning office on January 5, 2000, and met with Tammy Noble. Appellants claim Noble convinced them to sign an uncompleted application for a conditional use for an expanded home occupation and that their signature on the last page was without notarization. Appellants claim Noble said the application would "take care of the problem." Appellants contend the conditional use application was completed by someone else and notarized approximately three weeks later by a zoning office employee. At the hearing on the application before the Board of Zoning Appeals ("BZA"), Noble opposed the application after having met with some of appellants' neighbors. The BZA denied the application.
On June 29, 2000, the present action was commenced against appellants seeking preliminary and permanent injunctive relief. The zoning office alleged that appellants were in violation of the resolution by parking or storing commercial vehicles on a property zoned rural, in violation of sections 531.051 and 300.22 of the resolution; conducting commercial sales of mulch on a property zoned rural, in violation of section 300.022 of the resolution; conducting the warehousing of food and other items on a property zoned rural, in violation of section 200.022 of the resolution; and erecting and maintaining signs on property zoned rural, in violation of section 541 of the resolution. Upon motion of appellee, the trial court amended the case style to reflect the current zoning enforcement officer, Erica Scadden.
Appellants filed an answer, asserting various defenses. Appellants argued that the use of the property was a permitted "religious use" under the resolution, the zoning office was estopped to deny the lawfulness of the property use because it had previously issued a certificate of zoning compliance, and the zoning office was violating appellants' constitutional right to freedom of religion. On November 28, 2000, appellants moved for summary judgment, which was denied by the trial court.
A trial commenced in February 2001 and continued on various days through May 17, 2001. On June 12, 2001, the trial court entered judgment in favor of the zoning office. Appellants appeal this judgment, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED IN HOLDING THAT THE STATE OF OHIO, UPON RELATION, HAD STANDING TO PURSUE THIS ACTION.
 II. THE TRIAL COURT ERRED IN HOLDING THAT THE PLAINTIFF IN THIS CASE HAD A RIGHT TO SEEK INJUNCTIVE RELIEF, WHERE THE ONLY REMEDY AVAILABLE UNDER THE FRANKLIN COUNTY ZONING RESOLUTION, AS IT IS WRITTEN IS A CRIMINAL CITATION.
 III. THE COURT ERRED IN HOLDING THAT THE DEFENDANTS['] ACTIVITIES AT THE SUBJECT PROPERTY ARE NOT PERMISSIBLE "RELIGIOUS USES" PURSUANT TO THE EXPRESS TERMS OF THE FRANKLIN COUNTY ZONING RESOLUTION.
 IV. THE TRIAL COURT ERRED BY REFUSING TO APPLY THE DICTATES OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000, THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 7 OF THE OHIO CONSTITUTION TO THIS PROSECUTION OF A RELIGIOUS USE OF PROPERTY.
 V. THE TRIAL COURT ERRED WHEN IT HELD THAT FRANKLIN COUNTY'S CLAIMS WERE NOT BARRED BY THE APPROVALS OF ITS AUTHORIZED REPRESENTATIVES, AND THE APPLICABILITY OF THE DOCTRINE OF ESTOPPEL.
 VI. THE TRIAL COURT ERRED BY ELECTING NOT TO BALANCE THE ESTABLISHED PRINCIPALS EQUITY IN ADDRESSING THE ISSUES IN THIS INJUNCTION ACTION.
Appellants argue in their first assignment of error that the state of Ohio, upon relation, had no standing to pursue this action. The case caption on the complaint indicates as plaintiff:
STATE OF OHIO, EX REL., CHARLES MCCROSKEY
ZONING ENFORCEMENT OFFICER
FRANKLIN COUNTY DEVELOPMENT DEPARTMENT
373 SOUTH HIGH STREET
COLUMBUS, OHIO 43215
Appellants claim the state is not a real party in interest and has no right to bring an injunction action under R.C. 303.24 or any provision of the resolution. Appellants assert this defect is fatal and not merely harmless, claiming the action was brought under the state's name for the purposes of intimidating them and making them believe the action was criminal in nature.
Even assuming that the state's name should not have appeared in the caption of the complaint, we find no reversible error. Despite the general rule that the caption should be in proper form, caption defects may be disregarded unless the complaining party can demonstrate prejudice resulting from the failure to comply with the requisites of Civ.R. 10(A). Russell v. Scott (Dec. 15, 1998), Franklin App. No. 98AP-625, unreported; Mann v. Madison Twp. Bd. of Trustees (Dec. 20, 1984), Franklin App. No. 83AP-1060, unreported. As a result, a court may look beyond the caption of a complaint to determine matters which should have been captioned. Newark Orthopedics, Inc. v. Brock (Oct. 5, 1995), Franklin App. No. 95APE03-246, unreported (the caption's failure to state that a party was being sued in representative capacity rather than individually is not fatal to the complaint where the body of the complaint clarifies that issue); see, also, Gibbs v. Lemley (1972),33 Ohio App.2d 220 (the names appearing in the caption of the case do not determine who are the parties to the lawsuit, as the case hinges upon the allegations in the body of the complaint, not whether the party is included in the caption).
In the present case, appellants do not demonstrate or even claim any prejudice, and we find none. The first paragraph of the complaint clearly indicates that the plaintiff bringing the action is the Zoning Enforcement Officer of the Franklin County Development Department in Franklin County, Ohio. The state is mentioned nowhere in the body of the complaint. There is no indication that appellants were misled or their defense affected in any way by the case caption. Further, although appellants claim the caption names the state as the plaintiff so as to intimidate them into believing the action was criminal, we find this unpersuasive. The first paragraph of the complaint clearly indicates that the action was brought under R.C. 303.24, which provides for a civil remedy, and not R.C. 303.23, which provides for a criminal remedy. We find that even if the case caption was incorrect, any such error was harmless. We also noted that this court has before addressed similar actions pursuant to R.C. 303.24 that contained the same caption. See State ex rel. Miller v. Club LaRouge (June 28, 1990), Franklin App. No. 89AP-1323, unreported; State ex rel. Smith v. National Advertising Co. (July 30, 1981), Franklin App. No. 80AP-959, unreported. Therefore, appellants' first assignment of error is overruled.
Appellants argue in their second assignment of error the trial court erred in holding that appellee had a right to seek injunctive relief because section 710.01 of the resolution provides only that a person violating a provision of the resolution shall be guilty of a misdemeanor and subject to the penalty provided in R.C. 303.09, which contains no specific penalties. However, the complaint specifically indicates that the action was also brought under R.C. 303.24, which provides, in pertinent part:
 In case any * * * land is or is proposed to be used in violation of sections 303.01 to 303.25, inclusive, of the Revised Code, or of any regulation or provision adopted by any board of county commissioners under such sections, such board [or] * * * the county zoning inspector * * * in addition to other remedies provided by law, may institute injunction, mandamus, abatement, or any other appropriate action or proceeding to prevent, enjoin, abate, or remove such unlawful location, erection, construction, reconstruction, enlargement, change, maintenance, or use. (Emphasis added.)
Further, section 705.015 of the resolution provides that the Director of the Franklin County Development Department is empowered to:
 * * * interpret and enforce this Zoning Resolution and take all necessary steps to remedy any condition found in violation by ordering in writing, the discontinuance of illegal uses or illegal work in progress, and may request the Franklin County Prosecuting Attorney to commence appropriate action. * * * (Emphasis added.)
Both of these provisions make apparent that injunctive relief is an available remedy under the circumstances of the present case. R.C. 303.24
specifically permits an injunction, and we find that the language "all necessary steps to remedy any condition," as contained in section 705.015, is broad enough to encompass the use of an injunctive remedy under R.C. 303.24. Therefore, appellants' second assignment of error is overruled.
Appellants argue in their third assignment of error the trial court erred in holding that appellants' activities on the property are not permissible "religious uses" pursuant to the express terms of the resolution. In Saunders v. Zoning Dept. (1981), 66 Ohio St.2d 259, 261, the Ohio Supreme Court stated:
 Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. * * * Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. (Citations omitted.)
Because zoning regulations constitute derogation of a person's property rights, they should be given a fair and reasonable construction with due regard for the conflicting interests involved. Davis v. Miller (1955),163 Ohio St. 91, paragraph one of the syllabus. The meaning of the relevant provision of the code must be derived from the "context of the entire ordinance." In re University Circle, Inc. (1978), 56 Ohio St.2d 180,184. But any "[a]mbiguity must be construed against the zoning resolution because it is a police power exercise that constricts property rights." Freedom Twp. Bd. of Zoning App. v. Bd. of Mental Retardation (1984),16 Ohio App.3d 387, 390.
Appellants assert that the church and food ministry are "religious uses" under section 720.011 of the resolution, which defines "religious use" as "[a] structure or place in which worship, ceremonies, rituals and education pertaining to a particular system of beliefs are held." Appellants' assignment of error is misleading in that they claim the trial court found their activities on the property are not permissible "religious uses" under the resolution. The trial court never made such a determination. Rather, the trial court found that appellants failed to obtain a certificate of zoning compliance recognizing the property's change in use. Although appellants' merit brief addresses only the issue of whether their use is actually a permitted "religious use," we agree with the trial court that that question cannot be addressed until we address the preliminary issue of whether appellants possess a certificate of zoning compliance consistent with the current use of the property.
Appellants have owned the property in question since June 1977. The property consists of a single-family dwelling structure and nine and one-half acres. "Principal use" is defined in section 720.011 of the resolution as "The primary or predominant use of any lot." From 1977 to 1994, the principal use of the property was as a single-family residential dwelling. In December 1990, appellants applied for a certificate of zoning compliance to use the property as a farm market to sell corn, beans, tomatoes, fruit trees, etc. Importantly, at the time of the 1990 application, appellants described the use of the property as "residential." The certificate of zoning compliance for a farm market was issued in May 1991. Thus, it is apparent from this evidence that from 1977 to 1994, appellants used the property principally for a single-family dwelling structure.
In 1994, appellants began to use their property to store bread and clothing prior to distribution. Section 302.02 of the resolution permits accessory uses to the principal use; however, accessory uses are defined only as accessory buildings, such as detached garages, barns, and sheds, and uses in association with agriculture or permitted dwellings. Thus, it is clear that appellants' use of the property as a food distribution point for their ministry is a different use of the property for purposes that do not constitute an accessory use to the principal residential use.
Section 705.02 of the resolution indicates that no occupied or vacant land or existing or new building shall be changed in its use in whole or part until a certificate of zoning compliance has been issued by the administrative officer. Because the original use of the property was residential and there has now been a change in use, the issue is whether there exists a certificate of zoning compliance granting a permitted religious use. We find that there is not.
Appellants argue that the evidence is "far from conclusive" as to whether a certificate of compliance was obtained. Joel Clark, a zoning enforcement officer for the zoning office, testified that the only certificate of zoning compliance that had been issued for the property was for the farm market. Clark specifically stated that he was unable to find a certificate of zoning compliance from 1977 to present for church use. Clark testified that his knowledge of such was limited by his lack of finding a certificate using manual research. However, given his position and experience, we believe Clark's research sufficiently demonstrates that a certificate of compliance was never issued for a religious use on the property. Further, the record indicates that during the course of the proceedings, appellants applied for a certificate of zoning compliance to recognize the religious use of the property. The application was denied as being incomplete.Further, although appellants point out that they attempted on four separate occasions to provide a representative from the Franklin County Development Department with all the information required to support the issuance of a certificate of zoning compliance, the fact remains that no certificate was ever issued. They also cannot claim that they believed a certificate had been previously issued. Section 705.024 of the resolution provides that certificates of zoning compliance shall be issued or written refusal thereof given within seven days after the date of application. Because an applicant must be mailed a certificate within seven days, and appellants never received such, appellants cannot claim they believed they were in compliance with the zoning laws.
Because appellants failed to obtain a certificate of zoning compliance to change the use of their property from residential to religious, as required by section 705.02, we need not address whether the current use is, in fact, a "religious use" as defined by the resolution. No agency or tribunal has made any determination that appellants' use of their property is or is not for "religious uses." If the trial court or this court were to make the de novo determination as to whether the current use is a permitted "religious use," we would be usurping the powers of the zoning office. The determination of whether a use is a permitted religious use lies first with the zoning office. It is only after the zoning office refuses to issue a zoning certificate and the proper administrative actions are exhausted that this issue would be properly before the trial court or this court on appeal. As the trial court explained, a decision by this court or the trial court that the use of the property constitutes a permitted religious use would be purely academic, given neither the trial court nor this court has the power to issue a certificate of zoning compliance. Under the circumstances of this case, we find that the issue of whether appellants' use of their property is a religious use pursuant to the resolution may not be properly addressed at this stage.
Appellants also argue under this assignment of error that trailer storage and mulch sales are incidental to the religious use of the property. However, we have found above that there has not been a certificate of zoning compliance issued permitting the property to be used for religious uses. There can be no permitted accessory use to an illegitimate primary use. Therefore, these uses are also in violation of the zoning resolution. Accordingly, appellants' third assignment of error is overruled.
Appellants argue in their fourth assignment of error the trial court erred when it refused to apply the dictates of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), Section 2000cc, Title 42, U.S.Code; the first amendment of the United States Constitution; and Section 7, Article I, Ohio Constitution to this case. Section 2000cc(a)(1) of RLUIPA, which was enacted several months after the complaint was filed, provides, in pertinent part:
 No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or
institution —
 (A) is in furtherance of a compelling governmental interest.
 (B) is the least restrictive means of furthering that compelling governmental interest.
Assuming, without deciding, that the RLUIPA may be applied retroactively to appellants' case, we find that neither the act nor the United States or Ohio Constitutions can afford appellants any basis for relief at this juncture. The trial court found that because it determined appellants must file for a certificate of zoning compliance, it did not need to address the applicability of RLUIPA or the constitutional questions. We agree. Our determination of such would be premature, given that appellants may file for a certificate of zoning compliance, which could still hypothetically be granted. If such application is denied and appellants continue the review and appellate process, such application would be appropriate for review at that time. Thus, given there has been no determination by any agency or tribunal that the zoning resolution prohibits the particular use in question, we cannot say whether any hypothetical prohibition would infringe on appellants' religious practices in violation of RLUIPA or any constitutional provisions. Therefore, we also decline to address this issue, and appellants' fourth assignment of error is overruled.
Appellants argue in their fifth assignment of error the trial court erred when it held that appellee's claims were not barred by the prior approvals of its representatives and the doctrine of estoppel. Equitable estoppel precludes a party from asserting rights where he has by his own conduct, induced another to change his position to his detriment in good faith reliance upon the other party's conduct. London Lancashire Indem. Co. of America v. Fairbanks Steam Shovel Co. (1925),112 Ohio St. 136. It is generally held that the doctrine of equitable estoppel is not applicable against a state or its agencies with regard to its governmental functions. State ex rel. Upper Scioto Drainage 
Conservancy Dist. v. Tracy (1932), 125 Ohio St. 399, paragraph one of the syllabus; Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145-146. Government functions are those duties that are imposed upon the state as obligations of sovereignty, such as protection from crime, fires, or contagion, or preserving the peace and health of citizens and protecting their property. Ohio Dept. of Natl. Resources, Div. of Reclamation v. Hemlock Pipeline, Inc. (1991), 77 Ohio App.3d 668,670-671, citing Wooster v. Arbenz (1927), 116 Ohio St. 281, 284-285. Enforcement of zoning laws is in the nature of a governmental function. City of Columbus v. Bazaar Mgmt., Inc. (Jan. 6, 1983), Franklin App. No. 82AP-33, unreported. Where a claim of promissory estoppel is asserted against a governmental entity, it must be shown that the government agent's representations or statements were authorized. Pilot Oil Corp. v. Ohio Dept. of Transp. (1995), 102 Ohio App.3d 278 . If the representative is acting outside his or her authority, promissory estoppel does not apply. Lathrop Co. v. City of Toledo (1966),5 Ohio St.2d 165; Kimbrell v. Seven Mile (1984), 13 Ohio App.3d 443.
In the present case, appellants contend they relied on representations that Bryan Wagner had the power and authority to issue a certificate of zoning compliance when, in 1998, he reviewed the facts and advised them that everything was "okay." They also assert the same holds true for Tammy Noble, when in 2000, she met with them and induced them to apply for a conditional use certificate and implied that the certificate would be granted. Appellants claim they relied on the statements of both of these officials and changed their positions as a direct result of this reliance. Appellants, as the parties raising this affirmative defense, had the burden of demonstrating its applicability. See MatchMaker Internatl., Inc. v. Long (1995), 100 Ohio App.3d 406, 408.
We find appellants' arguments unavailing for several reasons. First, appellants present no evidence that either Wagner or Noble had the authority to issue a certificate of zoning compliance under the circumstances presented. Appellants only presented that Wagner had merely stated that everything was "okay" when they inquired about a certificate and that Noble told them they could get a conditional use granted to run their operation. Section 705.022 of the resolution specifically sets forth the requirements for obtaining a certificate of zoning compliance. Appellants have never received such a certificate for religious use. There is nothing to support a claim that the Franklin County Zoning Enforcement Officer may waive any condition of section 705.022 of the resolution or grant an application orally. The resolution makes clear that an officer may only waive provisions applicable to storm water and sanitary sewer plans contained in section 705.022(6). Appellants point us to no provision in the resolution that would allow an officer to waive the requirements of a formal application under section 705.02, plans under section 705.022, associated fees under section 705.023, or the issuance of a certificate under section 705.024. Our review of the resolution provisions reveals none. Because appellants did not follow any of the requirements of the provision, and neither Wagner nor Noble had the authority to grant a certificate of zoning compliance without such requirements being met, appellants' reliance upon estoppel is misplaced.
Further, appellants' reliance on any statements made at the meetings with the officers was not reasonable. As explained above, the resolution indicates that a zoning certificate must be issued within seven days. Thus, appellants could not have been under the mistaken belief that their use of the property was in compliance with the zoning resolution. Any reliance appellants put in the officers' statements was clearly unreasonable, given that they did not receive a certificate or notice of refusal within seven days of meeting the officers. Accordingly, appellants have failed to demonstrate the applicability of equitable estoppel to this case. Their fifth assignment of error is overruled.
Appellants argue in their sixth assignment of error the trial court erred by not balancing equity in addressing the injunction. Appellants claim the zoning office produced no evidence to suggest that their ministry caused any person any inconvenience, discomfort, harm, or damage, including a lack of evidence of traffic accidents, police reports, traffic congestion, or aesthetic problems. Appellants assert that, conversely, they demonstrated that the issuance of the injunction would cause them and many needy people great and irreparable harm by depriving hungry people of food. They called numerous witnesses to testify to such.
The trial court cited Ackerman v. Tri-City Geriatric Health Care, Inc. (1978), 55 Ohio St.2d 51, for the proposition that a balancing of equities or a finding of irreparable harm was not required in this case. In Ackerman, the Ohio Supreme Court held:
 In an action by the Director of Health to enjoin the operation of an unlicensed nursing home pursuant to R.C. 3721.08, an injunction shall be granted where it is undisputed that the evidence shows that the facility is a nursing home pursuant to R.C. 3721.01, that the nursing home is unlicensed and that the home is unlicensed because it does not comply with essential licensing requirements. Id. at syllabus.
The Ohio Supreme Court went on to point out that statutory actions granting government agents the right to sue to enjoin activities deemed harmful by the General Assembly are not designed primarily to do justice to the parties but to prevent harm to the general public. Therefore, "Ackerman clearly states that `statutory injunctions should issue if the statutory requirements are fulfilled."' State ex rel. Pizza v. Rezcallah (1998), 84 Ohio St.3d 116, 123, quoting Ackerman, at 57.
Appellants cite several cases for the proposition that the automatic injunction holding in Ackerman does not apply in all injunction cases and that some injunction actions must be governed by equitable principles. However, the three cases cited by appellants in their brief are nuisance actions or were brought under Ohio's Consumer Sales Practices Act. In contrast, courts in numerous cases dealing specifically with zoning regulations have followed Ackerman in finding that no balancing of equities is required and no irreparable harm need be shown. See Marion v. Turner (Mar. 12, 1999), Marion App. No. 9-98-49, unreported (municipal zoning resolution under R.C. 713.13); Painesville Twp. v. Buss (May 17, 1996), Trumbull App. No. 94-L-101, unreported (township zoning resolution under R.C. 519); Miller v. Byler (Mar. 11, 1991), Stark App. No. CA-8262, unreported (township zoning resolution under R.C. 519.24); Bridle v. Hudson Twp. (Jan. 25, 1989), Summit App. No. 13731, unreported (township zoning resolution under R.C. 519.24). We agree with the reasoning in these cases.
Further, this court has before cited Ackerman favorably in the context of a zoning action. In Bazaar, supra, we found, with regard to municipal zoning under R.C. 713.13, it would be inappropriate to balance equities because the zoning statute is not designed primarily to do justice to the parties but to prevent harm to the general public, as determined by the General Assembly. We further quoted that part of Ackerman in which the Ohio Supreme Court explained that when an injunction is authorized by statute, normal equity considerations do not apply, and a party is entitled to an injunction without proving the ordinary equitable requirements, upon a showing that the party has met the requirements of the statute for issuance of the injunction.
In sum, R.C. 303.24 provides that a county zoning officer may seek an injunction proceeding to enjoin unlawful construction, enlargement, or change in any land or building pursuant to its violation of R.C. 303.01
to 303.25 or of any regulation or provision adopted by any board of county commissioners under such sections. As the statute specifically provides for injunctive relief, and appellants have failed to obtain a certificate of zoning compliance to change the use of the property in violation of the zoning resolution pursuant to Ackerman, the trial court was not required to balance the equities in the present case. Therefore, appellants' sixth assignment of error is overruled.
Accordingly, appellants' six assignments of error are overruled, and the judgment of the Franklin County Municipal Court, Environmental Division, is affirmed.
Judgment affirmed.
LAZARUS and DESHLER, JJ., concur.