WRIGHT et al., Appellants,

v.

CITY OF DAYTON, Appellee.

[Cite as *Wright v. Dayton,* 158 Ohio App.3d 152, 2004-Ohio-3770.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20127.

Decided July 9, 2004.

Dennis A. Lieberman and James E. Swaim, for appellants.

Martin A. Beyer, for appellee.

---

FREDERICK N. YOUNG, Judge.

{¶ 1} Jackie Wright and Ken Sulfridge are appealing from the judgment of the Montgomery County Common Pleas Court, which granted summary judgment in favor of the defendant city of Dayton.

{¶ 2} Jackie Wright and Ken Sulfridge are employees of the city of Dayton and officers of Dayton Public Services Union Local 101. Wright is the president of the union and negotiated the collective bargaining agreement between the union and the city in that capacity. Wright and Sulfridge, as public employees in Ohio, participated in a benefit plan called the Ohio Public Employees Retirement System ("PERS"). Membership in PERS is mandatory and the PERS funds are managed and invested by the PERS Board for the benefit of the participants and beneficiaries.

{¶ 3} Pursuant to statute, public employees must contribute a certain percentage of their earnable salary to PERS. Additionally, public employers are required to contribute a certain percentage of the earnable salary of all of its participating employees. The PERS Board has the authority to set and modify the rates of both the employee and the employer.

{¶ 4} In 2000, the board set the employees' contribution rate at 8.5 percent of the employee's earnable salary and the employer's contribution rate at 13.55 percent of its total reportable payroll. Due to prudent investment practices and the contributions of employees and employers, in late 1999 and early 2000, PERS had sufficient assets to meet its financial obligations to present and future retirees and beneficiaries. Therefore, the PERS Board decided on February 29, 2000, to increase retirement benefits and to provide a one-time temporary discount of the employer contributions. These decisions were intended to benefit employees, retirees, and employers.

{¶ 5} The discount to the employers' contribution was implemented by a 40 percent discount in the employers' contribution for the second half of 2000. Thus, for the last six months of 2000, the employers had to contribute only 8.13 percent of their reportable income, which was down from 13.55 percent. As a result of the discount, the city of Dayton had approximately $1.3 million that it had budgeted for its employee contribution in 2000 but did not actually have to pay. Rather than give the unspent funds as a bonus to its employees, the city of Dayton elected to use the funds to offset its budget deficit.

{¶ 6} As a result of these events, on February 8, 2001, Jackie Wright, Ken Sulfridge, and three other political subdivision employees filed a class-action lawsuit against the city of Dayton and other political subdivisions. Their complaint sought certification of a plaintiff class of all political-subdivision employees in Montgomery, Greene, Clark, Miami, and Shelby counties and a defendant class of all political subdivisions in these counties.

{¶ 7} Class certification was denied on August 7, 2002. On January 31, 2003, the trial court administratively dismissed all the claims that did not involve the city of Dayton. This resulted in the only remaining parties being Wright, Sulfridge, and the city of Dayton. The city of Dayton filed a motion for summary

judgment, which was granted on August 22, 2003. Wright and Sulfridge have filed this appeal from the grant of summary judgment, raising the following assignments of error.

{¶ 8} "[1.] The trial court erred in granting summary judgment with regard to appellants' breach of contract claim."

{¶ 9} "[2.] The trial court erred in granting summary judgment with regard to appellants' claim of unjust enrichment."

{¶ 10} Our review of the trial court's decision to grant summary judgment is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 65–66, 8 O.O.3d 73, 375 N.E.2d 46.

Appellants' first assignment of error:

{¶ 11} Wright and Sulfridge argue that an implied-in-fact contract existed between Wright and Sulfridge, as city employees, and the city of Dayton in which the city was to pay a certain amount to PERS as a form of compensation in lieu of additional wages and that this contract was breached by the city of Dayton. We disagree.

{¶ 12} At the trial court level, Judge Richard Dodge performed the following analysis of this argument.

{¶ 13} "The defendant contends that no breach of contract occurred, because none of the applicable contracts: the Collective Bargaining Agreement ('CBA'), the City's Civil Service Rules, or the Policy and Procedures Manual, have terms governing these circumstances. In support of its motion, the city provides certified copies of the CBA, the city of Dayton's Civil Service Rules, and the city of Dayton's Personnel Policies and Procedures Manual for 2000. It is unclear from plaintiffs' amended complaint exactly which contract has been breached. The amended complaint states:

{¶ 14} " '46. Defendants enticed Plaintiffs and Members of the Class by assuring and representing to them that the payment of the stated pension benefit would function as a form of wage compensation if Plaintiffs and Members of the Class were employed by the Defendants.

{¶ 15} " '47. Plaintiffs and Members of the Class agreed to accept employment from Defendants on the basis of these representations.

{¶ 16} " '48. The Defendants have failed to perform or have repudiated the conditions of the contract by denying Plaintiffs and Members of the Class monies due the employees pursuant to the agreement.

{¶ 17} " '49. The employment contracts at issue here are contracts which include an implied duty of good faith and fair dealing. Defendants have breached these duties by denying, without justification, the compensation agreed to in the employment agreement.'

{¶ 18} "The Deposition of Ken Sulfridge provides no clarification with regard to exactly what contract is at issue. After numerous questions and answers regarding which contracts govern his terms of employment, Mr. Sulfridge was unable to pin down which contract in particular was breached. 'Q. I'm just asking you simply, do you know what contract you are referring to that the City of Dayton breached? A. No.' (Deposition of Ken Sulfridge, Nov. 6, 2001, p. 32.)

{¶ 19} "The Deposition of Jackie Wright provides no additional clarification:

{¶ 20} " 'Q. And so are you suggesting that the PERS benefits are mentioned in the collective bargaining agreement or not mentioned in the collective bargaining agreement?

{¶ 21} " 'A. It's not mentioned by name in this particular agreement, no.

{¶ 22} " 'Q. Is it mentioned any other way or referred to?

{¶ 23} " 'A. In the agreement?

{¶ 24} " 'Q. Yes.

{¶ 25} " 'A. No.

{¶ 26} " 'Q. If I wanted to find out what PERS rights you had, where would I look?

{¶ 27} " 'A. That's a good question. I have no idea.' (Deposition of Jackie Wright, Nov. 6, 2001, pp. 64–65.)

{¶ 28} "Having reviewed these documents, the court has found no mention of PERS or any employee's right to unspent funds held by the city. This fulfils the city of Dayton's burden to show that no genuine issue of fact remains on this claim.

{¶ 29} " 'Once the moving party presents evidence sufficient to support the motion under Rule 56(C), the adverse party must set forth specific facts showing that there is a genuine issue for trial.' *Gregg v. Allen*[-]*Bradley Co.* (C.A.6, 1986), 801 F.2d 859, 861; Civ.R. 56(E).

{¶ 30} "Plaintiffs contend in their response to this city's motion for summary judgment that there is no express term in the CBA from which their breach of contract claim stems. Instead, they allege, the contract at issue was 'implied in fact' during the course of the negotiations that took place when drafting the CBA. However, plaintiffs offer no evidence showing that, as they put it, 'it is inferrable that any negotiations with regard to the CBA were done with the knowledge by both sides that PERS existed, and that there was no need to specifically address the employer's contribution of funds for retirement benefits. It is also inferrable that the knowledge of both parties that the city was required to pay a certain percentage of each employee's wages into PERS affected the pay rates that were ultimately agreed to by the parties to the CBA.' (Plaintiffs' Response to Defendant City of Dayton's Motion for Summary Judgment, p. 3.) As a realistic and practical matter this is probably true, but there is simply no evidence presented that such inferences were made during the course of the negotiations of the CBA, or any other contract.

{¶ 31} "In particular, Article 36 of the Collective Bargaining Agreement, attached as Exhibit A to plaintiff Ken Sulfridge's deposition, states in pertinent part: 'The parties acknowledge that during the negotiations which resulted in this agreement, each had the unlimited right and opportunity to make demands and proposals with respect to wages, hours, fringe benefits and working conditions, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this agreement. Therefore, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically referred to or covered in this agreement, even though such subject or matter may not have been within the knowledge of [sic] contemplation of the parties at the time they negotiated or signed the agreement.' (CBA, Article 36, Section 2, pp. 49–50.) This agreement was signed by plaintiff Jackie Wright in her capacity as president of the DPSU Local 101, who participated in the negotiations that resulted in this CBA, which was effective for the time period June 1, 1999 through May 1, 2002. (Deposition of Jackie Wright, Nov. 6, 2001, p. 19.)

{¶ 32} "The party opposing this motion may not rest on mere allegations to respond to the defendant's motion for summary judgment. *Snyder v. City of Fairborn*, Greene App. No. 2001 CA 107, 2002-Ohio-3569 [2002 WL 1483282]. Plaintiffs simply have not met their burden of producing evidence on this 'issue for which [they bear] the burden of production at trial.' *Wing v. Anchor Media Ltd. of Texas*, [ (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus].

{¶ 33} "Accordingly, viewing the evidence in a light most favorable to the nonmoving parties, the motion for summary judgment as it pertains to the claim for breach of contract is sustained."

{¶ 34} Having reviewed the parties' arguments and the evidence, we agree with the trial court. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293–295, 662 N.E.2d 264. Therefore, we affirm the trial court's grant of summary judgment on Wright and Sulfridge's breach-of-contract claim and adopt it as our own. Appellants' first assignment of error is without merit and is overruled.

Appellants' second assignment of error:

{¶ 35} Wright and Sulfridge argue that the trial court erred in granting the city of Dayton summary judgment on their claims of unjust enrichment based on the city's arguments that the doctrine of unjust enrichment does not apply to municipal corporations and that appellants could not sustain an unjust-enrichment claim because they did not confer a benefit to the city. We disagree.

{¶ 36} In addressing the appellants' claims based on unjust enrichment, the trial court stated:

{¶ 37} " 'A claim for *unjust enrichment* arises when one person has unfairly benefitted from the services of another. In that event, courts have adopted a legal fiction, *quasi-contract,* to provide a remedy allowing the aggrieved party to seek recovery for as much as he deserves. That remedy is a claim for *quantum meruit* relief.' *Caras v. Green & Green* (June 28, 1996), Mont.App. Nos. 14943, 15089 [1996 WL 407861] (Emphasis sic.)

{¶ 38} "Defendant makes three arguments against the plaintiffs' unjust enrichment claim. First, defendant argues that the doctrine of unjust enrichment is inapplicable to municipalities, citing *G.R. Osterland Co. v. Cleveland* (2000), 140 Ohio App.3d 574 [748 N.E.2d 576]. Second, the defendant alleges that the plaintiffs cannot fulfill the elements of such a claim. Third, defendant asserts that unjust enrichment cannot be maintained where the action lies in contract, within the meaning of *Caras v. Green & Green,* supra.

{¶ 39} "In response, plaintiffs contend that the case relied upon by defendant in arguing that unjust enrichment does not apply to municipal corporations, *G.R. Osterland Co. v. Cleveland,* is inapplicable because it speaks in generalities. In reviewing a Civ.R. 12(B)(6) dismissal of breach-of-contract and unjust-enrichment claims brought by a contractor against the city of Cleveland, the court in *G.R. Osterland* states: '[T]he doctrine of unjust enrichment does not apply to a municipal corporation.' *G.R. Osterland Co.,* supra. In support of this contention, the court cites another case, in which it held: 'A municipal corporation cannot generally be held liable for quasi- or implied contracts or for claims based upon

the theory of *quantum meruit.*' *Cuyahoga Cty. Hosp. v. Cleveland* (1984), 15 Ohio App.3d 70 [72, 15 OBR 99, 472 N.E.2d 757], citing *Eastlake v. Davis* (1952), 94 Ohio App. 71, 74 [51 O.O. 279, 114 N.E.2d 627], citing 28 Ohio Jurisprudence, 924, Section 575 ('There can be no recovery against a municipality of this state for a claim on a *quantum meruit* basis').

{¶ 40} "Plaintiffs also contend that the reasoning in *Cantor v. Berkshire Life Ins. Co.* (1960), 171 Ohio St. 405 [14 O.O.2d 157, 171 N.E.2d 518], is applicable herein. However, because *Cantor* concerned a private pension plan, it is significantly different from this case. 'A village cannot be made liable as can private parties in relations quasi *ex contractu.* No liability attaches to a village where the plaintiff seeks to hold the corporation liable in *quantum meruit* or on an implied contract.' (Emphasis sic.) *Eastlake v. Davis,* supra. 'As a check against misuse of city authority by local officials, procedural safeguards have been adopted which govern the creation of public obligations and liabilities. Generally, municipalities may not be bound to a contract unless the agreement is formally ratified through proper channels. As a result, a claim may not be sustained against a municipal corporation upon theories of implied or quasi-contract. Only express agreements adopted by the City in accordance with law may be enforced.' (Internal citations omitted.) *Cuyahoga Falls v. Ashcraft* (December 26, 1991), Summit App. No. 15129 [1991 WL 284188]. These cases show that a claim for quasi- or implied contract, such as in this case, cannot be brought against a municipality under the theory of unjust enrichment.

{¶ 41} "The defendant's second argument is that plaintiffs cannot meet the elements of an unjust-enrichment claim. The elements that must be proven in a claim for unjust enrichment are '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179 [183, 12 OBR 246, 465 N.E.2d 1298, citing *Hummel v. Hummel* (1938), 133 Ohio St. 520, 525, 11 O.O. 221, 14 N.E.2d 923]. The plaintiffs argue that the 'benefit' conferred by the employees was the service they provided in working for the city. Assuming that this is true, the defendant provides evidence that the amount of 'payment' provided by the city in return for these services; to-wit, the amount of retirement benefits received by the employee, actually increased during this time period. 'The amount contributed by the city of Dayton employees did not change, *nor did their benefit decrease. PERS actually increased the level of retirement benefits for the employees during this time.*' (Emphasis added.) (Affidavit of Jeffrey A. Woodson, paragraph 7.) Presumably, plaintiffs provided the same amount of service to the city. Plaintiffs provide no evidence that they received anything less than they ordinarily would have received in return. In

this case, there is no evidence presented to show a 'retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' Id.

{¶ 42} "As expressed in the breach of contract claim, the court must emphasize that in order to overcome a motion for summary judgment, the party opposing this motion may not rest on mere allegations in their response. *Snyder v. Fairborn,* Greene App. No. 2001 CA 107, 2002-Ohio-3569 [2002 WL 1483282]. Plaintiffs simply have not met their burden of producing evidence on this 'issue for which [they bear] the burden of production at trial.' *Wing v. Anchor Media Ltd. of Texas,* supra.

{¶ 43} "Because the court has found no genuine issues of material fact with regard to a claim for unjust enrichment based upon the defendant's first two contentions, the court finds that it is unnecessary to consider defendant's third argument, that a claim for unjust enrichment cannot be brought where summary judgment is allowed on a concurrent breach of contract claim.

{¶ 44} "Therefore, the motion for summary judgment as it pertains to the claim of unjust enrichment is sustained."

{¶ 45} After having reviewed the evidence presented and the arguments on appeal, we find the trial court's analysis to be well reasoned and adopt it as our own. See *Dresher v. Burt,* 75 Ohio St.3d at 293–295, 662 N.E.2d 264. We cannot say that the trial court erred in granting summary judgment to the city of Dayton on appellants' unjust-enrichment claims. Appellants' second assignment of error is without merit and is overruled.

{¶ 46} Further, we are perplexed as to why Wright and Sulfridge believed that they were entitled to a share of the city's money that it had budgeted for payment to PERS, but we explicitly find that their claim was not frivolous because, after all, it was "worth a try."

{¶ 47} The judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and GRADY, JJ., concur.