[Cite as *Sun Bldg. Ltd. Partnership v. Value Learning & Teaching Academy, Inc.*, 2017-Ohio-8727.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| SUN BUILDING LIMITED PARTNERSHIP, | : | APPEAL NOS. C-160789 |
| | | C-160793 |
| LITVAK HOLDING, LLC, | : | TRIAL NO.    A-1404504 |
| | : | |
| and | | |
| | : | *O P I N I O N.* |
| TRIAGE PROPERTIES, LLC, | : | |
| Plaintiffs-Appellants-Cross-Appellees, | : | |
| OHIO ATTORNEY GENERAL, | : | |
| and | : | |
| OHIO DEPARTMENT OF EDUCATION, | : | |
| Intervenors-Plaintiffs-Appellees, | : | |
| vs. | : | |
| VALUE LEARNING & TEACHING ACADEMY, INC., d.b.a. VLT ACADEMY, | : | |
| Defendant-Appellee-Cross-Appellant, | : | |
| and | : | |
| VALERIE LEE, Individually and as Superintendent of VLT Academy, | : | |
| CLYDE LEE, Individually and as Registered Agent of CEED, Inc., | : | |
| VALERIE WATSON, | : | |

[Cite as *Sun Bldg. Ltd. Partnership v. Value Learning & Teaching Academy, Inc.*, 2017-Ohio-8727.]

LAWRENCE JONES,                        :

CANDACE GREEN,                         :

DANIEL CUMMINS,                        :

BRAD MOELLER,                          :

GAIL WHITE,                            :

KELLY M. JOHNSON,                      :

ROBERT L. MONTGOMERY,                  :

JUDY MCCONNELL,                        :

LARRY LASH, Individually and as        :
Treasurer of VLT,
                                       :
CHRIST TABERNACLE MINISTRIES
OF    EXCELLENCE,    INC.,    d.b.a.   :
EDUCATIONAL            RESOURCE
CONSULTANTS OF OHIO, INC.,             :

    and                                :

J.  LEONARD  HARDING,  Executive       :
Director   of   Educational   Resource
Consultants of Ohio, Inc.,             :

    Defendants-Appellees,              :

    and                                :

RON DUMAS, et al.                       :

    Defendants.                        :


Civil Appeals From:  Hamilton County Court of Common Pleas

Judgment Appealed from is:  Affirmed

Date of Judgment Entry on Appeal:  November 29, 2017

*McIntosh & McIntosh, PLLC*, and *Bruce B. McIntosh,* for Plaintiffs-Appellants-Cross-Appellees Sun Building Limited Partnership, Litvak Holdings, LLC, and Triage Properties, LLC,

*Michael DeWine*, Ohio Attorney General, and *Todd R. Marti*, Assistant Attorney General, for Intervenors-Plaintiffs-Appellees the Ohio Attorney General and the Ohio Department of Education,

*McCaslin, Imbus & McCaslin*, *Ian R. Smith* and *R. Gary Winters*, for Defendants-Appellees Valerie Watson, Lawrence Jones, Candace Green, Daniel Cummins, Brad Moeller, Gail White, Kelly M. Johnson, Robert L. Montgomery, Judy McConnell, and Larry Lash, and Defendant-Appellee-Cross-Appellant VLT Academy,

*Bruns, Connell, Vollmar & Armstrong, LLC*, and *Thomas B. Bruns*, for Defendants-Appellees Valerie Lee and Clyde Lee,

*Brown Law Firm LLC* and *Phyllis E. Brown*, for Defendants-Appellees Educational Resource Consultants of Ohio, Inc., and J. Leonard Harding.

**MYERS, Judge.**

{¶1} These appeals arise from the closure of an insolvent community school. The closure and insolvency led to litigation by the school's landlords to recover unpaid rent from the school, its sponsor, and various individuals the school claimed were liable for the debt. The trial court entered judgment for the landlords for the amount of unpaid rent after determining the leases were enforceable. However, when distributing the limited assets of the school, the trial court ordered that the former school employees' claims for unpaid wages and retirement contributions be paid first. The trial court also determined that the landlords could not recover the rent damages from the individual defendants and the school's sponsor. The landlords and the school have both appealed from these judgments. For the reasons that follow, we affirm.

## Background Facts and Procedure

{¶2} Plaintiffs-appellants-cross-appellees Sun Building Limited Partnership, Litvak Holdings, LLC, and Triage Properties, LLC, ("Landlords") are owners of real estate that housed defendant-appellee-cross-appellant the VLT Academy ("VLT"), a community school that was formed in 2005 under R.C. Chapter 3314. VLT was sponsored by defendant-appellee Christ Tabernacle Ministries of Excellence, Inc., d.b.a. Educational Resource Consultants of Ohio, Inc., ("ERCO"). The Landlords not only leased the properties to house the school, but they also allegedly improved them to house the school's campus based on promises from VLT that the school would continue to operate there. VLT eventually incurred large operating losses and fell behind on rent. The Landlords accepted reduced rent based on an alleged agreement with VLT that the arrearages would be paid during the succeeding years.

4

{¶3}   Because of the school's financial and educational problems, ERCO declined to renew its sponsorship contract with the school that expired after the 2013-2014 school year.  VLT was not able to secure another sponsor, and is now defunct and insolvent.

{¶4}   The Landlords filed this lawsuit in July 2014 against VLT for breach of contract and unjust enrichment, seeking the recovery of unpaid rent, future rent owed under the lease, and recoupment of the costs of the improvements to the property. Pursuant to a term of the leases, the Landlords also sought to seize and sell VLT's property in the buildings to satisfy their claims against VLT.

{¶5}   Recognizing that VLT was insolvent, the Landlords also named as defendants individuals involved in the operation and oversight of VLT, including its Superintendent—Valerie Lee, Lee's husband Clyde, who owned CEED, Inc., a company that contracted with VLT for cleaning services, as well as VLT's then-current or former board of directors and financial officers ("VLT Director and Officer Defendants"), seeking to hold these defendant-appellee parties personally liable under various theories for any money damages owed by VLT.

{¶6}   The Ohio Department of Education and the Attorney General ("ODE/AG") intervened in the lawsuit. Noting that VLT's funds are public and that its property is reserved for public purposes, intervenors-plaintiffs-appellees ODE/AG argued their intervention was necessary to protect the public's interest in VLT's assets, including the personal property left in the buildings VLT rented, and to protect VLT's claims against "VLT insiders," those accused of misusing VLT's funds and contributing to its insolvency.  The ODE/AG filed an intervenors complaint that, as amended, named as defendants Lee, Clyde Lee, CEED, Inc., Echole Harris (the

5

Lees' daughter), former VLT treasurer McConnell, and the Hartford Fire Insurance Company, the alleged surety for Lee and McConnell on public official bonds, seeking the recovery of public funds. The ODE/AG also sought a declaration that the Landlords' leases with VLT were invalid.

{¶7} VLT's sponsor ERCO also moved to intervene in the action, claiming it was the party charged by law with overseeing the closure of the school and disposition of its assets. ERCO withdrew this motion after the Landlords amended their complaint to add claims against ERCO and ERCO's executive director (the "ERCO Defendants"), seeking to hold these parties responsible for VLT's alleged debts.

{¶8} On September 9, 2014, by agreed entry, the trial court ordered the sale of VLT's assets, and this entry indicated that proceeds of the sale would be held in escrow by the auctioneer until further order of the court. The case was then consolidated with another action brought in another court by a former VLT teacher.

{¶9} Pursuant to R.C. 1702.50(A)(1) and 3314.074, the trial court ordered the presentation and proofs of all claims against VLT. Ultimately, 33 former teachers and administrators submitted claims for the payment of wages and retirement-contribution benefits. The Landlords submitted claims for the unpaid rent. Applying R.C. 3314.074, the trial court issued a final order of distribution, and gave preference to the employee claims over those of the Landlords. The trial court subsequently stayed this order of distribution.

{¶10} After the Landlords filed a second amended complaint, VLT moved for summary judgment on the breach-of-contract claims, and the Landlords moved for partial summary judgment on the contract claim for past-due rent. The ERCO

Defendants and the VLT Director and Officer Defendants moved to dismiss the claims under Civ.R. 12(B)(6). Lee and Clyde Lee moved for judgment on the pleadings under Civ.R. 12(C).

{¶11} The trial court granted partial summary judgment to the Landlords on their breach-of-contract claim against VLT, but dismissed all of the other defendants named in the Landlords' complaint based on statutory "immunity."[1] The trial court then certified that these judgments were final and that there was no just reason for delay.

{¶12} In the appeal numbered C-160789, the Landlords appeal from the order of distribution of VLT's property and the trial court's dismissal of the claims against all defendants except VLT. In the appeal numbered C-160793, VLT appeals from the grant of partial summary judgment for the Landlords for unpaid rent and cross-appeals from the order of distribution.

### Community Schools

{¶13} All of the assignments of error involve VLT's status as a "community school." Community schools are created under R.C. Chapter 3314 as state-funded public schools that are independent of any school district and are privately run. *See* R.C. 3314.01(B); R.C. 3314.02(B) and (C)(1); R.C. 3314.08(D); *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 7.

{¶14} Community schools must be structured as nonprofit corporations or public-benefit corporations as contemplated in R.C. Chapter 1702. *See* R.C. 3314.03(A)(1). By statute, each community school is "under the direction" of a

---

[1] The Landlords voluntarily dismissed Ron Dumas, one of the named VLT Director and Officer Defendants.

"governing authority" that consists of a board of at least five individuals. R.C. 3314.02(E)(1). Every community school enters into and is governed by a contract with an authorized "sponsor" that monitors the school's performance and its compliance with all laws applicable to the school. R.C. 3314.03(A)(4). The sponsor contract must contain certain information, including an addendum identifying the facilities to be used for the school, "the annual costs associated with leasing each facility that are paid by or on behalf of the school," and the name of the landlord. R.C. 3314.03(9).

{¶15} As required by statute, VLT was established as a nonprofit corporation under R.C. Chapter 1702, *see* R.C. 3314.03(A)(1), with a board of directors serving as the governing authority of the school. As the governing authority of VLT, the board of directors entered into a "sponsorship contract" with the school's sponsor, ERCO, beginning in 2005. As sponsor, ERCO was charged with monitoring VLT's performance and its compliance with applicable standards and requirements. *See* R.C. 3314.03(A)(4). ERCO and VLT's board renewed the sponsor contract until ERCO declined to renew it beyond the 2013-2014 school year. When the sponsor agreement with ERCO expired on June 30, 2014, VLT was unable to find another sponsor and the school closed.

{¶16} Under R.C. 3314.071, any contract entered into by the governing authority of a community school or any of its officers and directors is deemed to be entered into by the individual in her official capacity. The statute continues: "[n]o officer, director, or member of the governing authority [of VLT] incurs any personal liability by virtue of entering into any contract on behalf of the school." Under R.C. 3314.07(E), ERCO (as sponsor), its directors, officers, and employees, are "immune

from civil liability for any action authorized under [R.C. Chapter 3314.] or the contract entered into with the school under section 3314.03 of the Revised Code that is taken to fulfill the sponsor's responsibility to oversee and monitor the school." Specifically, ERCO and its officers, directors, and employees

> Are not liable in damages in a tort or other civil action for harm allegedly arising from any of the following:
>
> (1) A failure of the community school or any of its officers, directors, or employees to perform any statutory or common law duty or responsibility or any other legal obligation;
>
> (2) An action or omission of the community school or any of its officers, directors, or employees that results in harm[;]
>
> (3) A failure or omission of the community school or any of its officers, directors, or employees to meet the obligations of any contract or other obligation entered into on behalf of the community school and another party.

R.C. 3314.07(E).

### Appeal No. C-160793

{¶17} We first address VLT's two related assignments of error raised in the appeal numbered C-160793. VLT argues that the trial court erred by resolving the cross-motions for summary judgment on the unpaid-rent claims in favor of the

Landlords because the leases were not enforceable, and that, because of this, the trial court erred by distributing any of VLT's assets to the Landlords.

{¶18}   We review the trial court's grant of summary judgment de novo, applying the standard set forth in Civ.R. 56.  *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.  Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Civ.R. 56(C).

{¶19}   Generally, to prevail on a breach-of-contract claim, a plaintiff must establish the existence of a contract, performance by the plaintiff, breach by the defendant, and damages.  *Tidewater Fin. Co. v. Cowns*, 197 Ohio App.3d 548, 2011-Ohio-6720, 968 N.E.2d 59, ¶ 12 (1st Dist.).  An agreement that binds a governmental entity involves public money.  Therefore, it must be in writing and approved pursuant to the formalities required by law.  *See Lathrop Co. v. City of Toledo*, 5 Ohio St.2d 165, 172, 214 N.E.2d 408 (1966) ("[N]o recovery can be had on a contract that is entered into contrary to one or more of the legislated requirements."); *Waltherr-Willard v. Mariemont City Schools*, 601 Fed.Appx. 385, 389 (6th Cir.2015), citing *Wright v. City of Dayton*, 158 Ohio App.3d 152, 2004-Ohio-3770, 814 N.E.2d 514, ¶ 40 (2d Dist.).

{¶20}   VLT conceded that Lee, as superintendent of VLT, had the authority to bind VLT when she signed the challenged leases.  It argued instead that the leases were not enforceable unless the board voted to accept them after they were signed. And VLT presented unrefuted evidence in support of summary judgment

demonstrating that VLT's board did not vote to accept the leases after they were signed.

{¶21} VLT does not cite any specific statute addressing the formal requirements with respect to community-school leases. Nor does it cite any law requiring subsequent approval of a signed lease. Rather, VLT cites only the requirement of R.C. 3314.02(D) that the board vote to adopt the sponsorship contract with a sponsor to create a community school.

{¶22} After our review of the law, we conclude that a governmental entity can bind itself to a lease by taking sufficient action before it is executed. *See State ex rel. Perona v. Arceci*, 129 Ohio App.3d 15, 716 N.E.2d 1181 (9th Dist.1998); R.C. 3313.33(B) ("No contract shall be binding upon any board [of education] unless it is made or authorized at a regular or special meeting of such board.").

{¶23} The Landlords presented unrefuted evidence that the board had voted to authorize the leases before execution. This evidence included authenticated copies of the leases. These leases contained a sworn statement from Lee warranting that "she is duly authorized to execute and deliver this Lease on behalf of [VLT] in accordance with a duly adopted resolution of such entity in accordance with the Bylaws of such entity, and that the Lease is binding upon such entity." VLT does not argue otherwise. Nor does it present any evidence to the contrary. The Landlords also presented evidence that the board had approved the sponsor contract that, as required by R.C. 3314.03(9), identified the leased property, the landlords, and the amount of the rental payments. Therefore, the Landlords established that the board had authorized the leases before they were executed by Lee and the Landlords. This

is sufficient, and the board was not required to subsequently ratify the contract they had already authorized.

{¶24} Moreover, VLT did not challenge the Landlords' summary-judgment evidence concerning the Landlords' performance, VLT's breach, or the amount of damages. Thus, the Landlords were entitled to judgment as a matter of law on their claim for breach of contract related to the unpaid rent. VLT, conversely, was not entitled to summary judgment on the breach-of-contract claims. And because the Landlords' claim against VLT was enforceable, the trial court did not err by awarding the Landlords a distribution of VLT's assets.

{¶25} Accordingly, we overrule VLT's first and second assignments of error.

## Appeal No. C-160789

{¶26} The Landlords' first assignment of error is directed to the trial court's order of distribution concerning about $222,000 in net proceeds from the sale of VLT's assets after a public auction. Applying R.C. 3314.074, and relying on the stipulation that set forth the amount of the claims, the trial court ordered that most of these proceeds be distributed to the former VLT teachers and administrators (excluding Lee, McConnell, and Harris) who had made claims for unpaid wages, and to the appropriate retirement systems to satisfy the employer retirement contribution for those wages. The court then ordered that the remainder of the proceeds, about $3000, be distributed pro rata to "the Plaintiffs [Landlords]" based on the amount of their claims.[2]

---

[2] The parties represent that the trial court ordered that only Sun Building Limited Partnership receive the remaining funds. The record reflects, however, that while the trial court initially indicated to the parties by a letter on July 1, 2016, that only Sun Building Limited Partnership would receive the sum of $2,830.06, in its subsequent judgment entry dated September 22, 2016, the court ordered the remaining sums to be distributed "pro rata" to the Landlords.

{¶27} When explaining the distribution order, the trial court stated that R.C. 3314.074 gave it "discretion to distribute the property of a closed community school according to the equities of the case." And the court found that the equities of the case required that it give priority to the employee-related claims over the claims of the other creditors, such as the Landlords. The court noted that those former employees had no culpability for the school's financial troubles and no way to protect themselves from those problems, and the Landlords could have avoided some of their claimed losses by "acting more quickly to enforce their rights under the leases, but chose not to do so." The court also noted that preferring the employees was "consistent with Ohio's pattern of generally preferring employee claims over claims of general creditors." On appeal, the Landlords contend that the court erred by preferring the employee-related claims because R.C. 3314.074 unambiguously required a pro rata distribution. We disagree.

{¶28} R.C. 3314.074 governs the distribution of the assets of defunct community schools and provides in relevant part:

> Divisions (A) and (B) of this section apply only to the extent permitted under Chapter 1702. of the Revised Code.
>
> (A) If any community school established under this chapter permanently closes and ceases its operation as a community school, the assets of that school shall be distributed first to the retirement funds of employees of the school, employees of the school, and private creditors who are owed compensation, and then any

remaining funds shall be paid to the department of education for the redistribution to the school districts in which the students who were enrolled in the school at the time it ceased operation were entitled to attend school under section 3313.64 or 3313.65 of the Revised Code. The amount distributed to each school district shall be proportional to the district's share of the total enrollment in the community school.

\* \* \*

(C) If the assets of the school are insufficient to pay all persons or entities to whom compensation is owed, the prioritization of the distribution of the assets to individuals or entities within each class of payees may be determined by decree of a court in accordance with this section and Chapter 1702. of the Revised Code.

{¶29} We review de novo issues of law such as the interpretation of statutes. Under the clear and unambiguous language of R.C. 3314.074, the assets of a closed community school must be distributed "first to the retirement funds of employees of the school, employees of the school, and private creditors who are owed compensation"—all of which are in the same class of payees. R.C. 3314.074(A). If there are any remaining funds, they shall be paid to the school districts where the community school's students resided on a pro rata basis. R.C. 3314.074(A).

{¶30} In arguing that the trial court erred in its application of R.C. 3314.074, the Landlords maintain that the statute does not allow for any equitable

14

considerations and requires an equal division among the three types of payees—retirement funds, employees, and creditors. R.C. 3314.074(A) provides that money received from the sale of the defunct community school's assets "shall be distributed first to the retirement funds of the employees of the school, employees of the school, **and** private creditors who are owed compensation." (Emphasis added.) But this argument ignores the language in section (C) authorizing the trial court to determine the "prioritization of the distribution of assets to individual persons or entities within each class of payees" if the school's assets are insufficient to pay all claims. We find, as the trial court did, that the statute gives the court discretion to determine the allocation between employee-related and general-creditor claims, so long as the allocation is in accordance with R.C. 3314.074 and R.C. Chapter 1702.

{¶31} R.C. Chapter 1702 does not specifically address how these claims are to be allocated. It does, however, contain provisions on the distribution of a nonprofit corporation's property during the "winding up" of its affairs, *see* R.C. 1702.49, and authorizes the court of common pleas to supervise the resolution of the claims against that property, *see* R.C. 1702.50, including the distribution of the property and the "issuance * * * of any * * * order that the court considers proper." R.C. 1702.50(A)(9). Although the general rule is that "assets of a dissolved insolvent corporation should be preserved for the benefit of all its creditors, each to share in proportion to his claim," *Cay Machine Co. v. Firestone Tire & Rubber Co.*, 175 Ohio St. 295, 194 N.E.2d 425 (1963), paragraph one of the syllabus, the common pleas court has the authority "to ensure that each beneficial owner receives his due according to the equities of the situation." *Id.* at 300 (interpreting identical language

in R.C. 1701.89 that governs the winding up of affairs of an insolvent for-profit corporation).

{¶32} We also find instructive Ohio laws protecting these unpaid workers and their retirement funds. For instance, R.C. 1311.34 provides a preference for the claims of unpaid laborers over those of general, unsecured creditors, for labor that is performed, as in this case, "within the period of three months" before the employer is "placed in the hands of an assignee, receiver, or trustee." And R.C. 3307.41 and 3309.66 shield public school employee and teacher retirement funds from execution and garnishment, except in certain domestic-relations proceedings.

{¶33} Although we agree that R.C. 3314.074(A) does not specifically state whether distribution is to be pro rata, in the order listed, or in the court's discretion, we cannot accept the interpretation proposed by the Landlords, which would conflict with R.C. 3314.074(C) and the language of these other referenced statutes. R.C. 3314.074(A) and (C), when considered in pari materia with these other statutes, do not require the trial court to order a pro rata distribution of assets to the retirement system, unpaid employees, and the general creditors when the assets of the defunct community school are insufficient to satisfy the claims of all the payees in that class. Rather, we conclude that the court has discretion to determine the order of payment and allocation.

{¶34} Ultimately, we review the trial court's order of distribution of assets under an abuse-of-discretion standard. *See Cay*, 175 Ohio St. at 298, 194 N.E.2d 425; *Union Bank Co. v. N. Carolina Furniture Express, L.L.C.*, 189 Ohio App.3d 538, 2010-Ohio-4176, 939 N.E.2d 873, ¶ 20 (3d Dist.). Because the trial court's order of distribution was consistent with the law and was supported by the evidence, it was

not arbitrary, unreasonable, or capricious, and we cannot say that it was an abuse of discretion. Accordingly, we overrule the first assignment of error.

{¶35} In their second assignment of error, the Landlords argue that the trial court erred by dismissing their claims against the ERCO Defendants, the VLT Board of Director and Officer Defendants, and defendants Lee and Clyde Lee.

{¶36} The Landlords do not challenge on appeal the trial court's determination that R.C. 3314.071 and 3314.07(E) precluded any contract-based claims against these parties. Instead, the Landlords' argument in support of reversal centers around their contention that they stated claims against the VLT Director and Officer Defendants, the ERCO Defendants, and Lee and Clyde Lee, based on allegations that these defendants had "engaged in conduct that [wa]s wanton, willful, and out of the scope of their employment," causing the[se] [defendants] to "lose the immunity provided by statute" and rendering them "civilly liable for the damages incurred by the [Landlords]," and thus entitling the Landlords "to damages and payment for the balance due and owing on the leases entered into by the [defendants]."

{¶37} The Landlords, however, do not cite any authority recognizing a private cause of action against any of these defendants for the mismanagement or misuse of public funds that would allow the Landlords to recover from these defendants for VLT's debt. As a matter of law, these defendants owed no fiduciary duties to the Landlords, even though they may have owed duties to VLT and the public in general.

{¶38} Admittedly, R.C. 2307.60 does authorize a private cause of action for damages from any criminal act. *See Jacobson v. Kaforey*, 149 Ohio St.3d 398, 2016-

Ohio-8434, 75 N.E.3d 203, ¶ 10, 13. And the Landlords alleged that contracts entered into between Lee and Clyde Lee violated R.C. 2921.42, which prohibits a public official from having an unlawful interest in a public contract. But the civil cause of action for damages authorized by R.C. 2307.60 does not arise when otherwise prohibited by law. *Id.* at ¶ 13. Here, the Landlords are seeking to recover public funds for their own private use, which is not permitted under the law. While the defendants may be public officials that can be held liable for the misuse of public funds in an action brought by the appropriate state authority, *see Cordray v. Internatl. Preparatory School*, 128 Ohio St.3d 50, 2010-Ohio-6136, 941 N.E.2d 1170, the Landlords do not have standing to bring this claim. We note that the intervenor attorney general is pursuing these claims at the request of the state auditor.

{¶39} For these reasons, we have no occasion to review, as urged by the Landlords, the statutory exceptions to immunity from tort liability that can apply to political subdivision employees, including those set forth in R.C. 2744.03(A)(7).

{¶40} Upon our de novo review of the dismissal of the challenged claims, we determine that, accepting all the factual allegations in the complaint as true, the Landlords have not stated a claim upon which they can recover against the ERCO Defendants, the VLT Director and Officer Defendants, or the Lees. *See O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988); *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165-166, 297 N.E.2d 113 (1973). Thus, the trial court did not err by dismissing the claims against these defendants-appellees. Accordingly, we overrule the Landlords' second assignment of error.

{¶41} We note that we are disregarding the Landlord's argument challenging the purported settlement agreement between the attorney general and Hartford Insurance. The Landlords did not amend their notice of appeal or file a new notice of appeal to challenge this agreement, and therefore, this court lacks jurisdiction to review this argument.

## Conclusion

{¶42} Because the Landlords have demonstrated that no genuine issue of fact exists as to an essential element of its breach-of-contract claims against VLT for unpaid rent due under the leases, the Landlords are entitled to judgment as a matter of law on that claim. The trial court therefore did not err by entering summary judgment for the Landlords on that claim and by ordering the distribution of some of VLT's assets to the Landlords in satisfaction of this debt.

{¶43} Further, the trial court's order of distribution that gave priority to the claims of VLT's former employees was consistent with the law and the facts, and was not an abuse of discretion afforded the court in the distribution of assets of an insolvent community school.

{¶44} Finally, because the Landlords have stated no claims for relief upon which they can recover from the ERCO Defendants, the VLT Director and Officer Defendants, and the Lees, the trial court did not err by dismissing these defendants.

Judgment affirmed.

MOCK, P.J., concurs.
MILLER, J., concurs separately.

**MILLER, J.**, concurring separately.

{¶45} I concur in the result and with nearly everything stated by the majority. I write separately to state my view that R.C. 3314.074 affords a trial court less discretion than the majority indicates.

{¶46} I disagree with the majority's reading that there are two payee classes—"retirement funds of employees of the school, employees of the school, and private creditors" comprising one class, and public schools, the second. Treating public schools as a class of payees under R.C. 3314.074(C), which gives the court some discretion to control payments, conflicts with R.C. 3314.074(A), which expressly dictates that funds "redistribut[ed]" to school districts "shall be proportional to the district's share of the total enrollment in the community school." A court has no discretion concerning how these distributions occur. Nor is the court even involved in determining which school districts receive a redistribution. That role is reserved to the Department of Education.

{¶47} R.C. 3314.074(C) speaks to distributions "within each class of payees." Since public schools are not a payee class, "retirement funds of employees of the school, employees of the school, and private creditors who are owed compensation," are three payee classes, not one. If these three were a single class, then "within each class" would be meaningless.

{¶48} I would further hold that R.C. 3314.074(A) states the order in which payment is required—retirement funds first, employees second, and private creditors third. This means that a court does not have discretion to order payment be made to creditors before payment to retirement funds or employees.

20

**{¶49}** In sum, I would hold that the court's discretion is limited to distributions within each of the three classes set forth above, and that the priority of distribution is set by statute. Because the trial court ordered payments be made to employees prior to creditors, I concur in the affirmance.

Please note:

The court has recorded its own entry on the date of the release of this opinion.